

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

July 15, 2024

**BY ECF**
Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      **Re:**      ***United States v. Matthew Queen*, 24 Cr. 291 (LAK)**

Dear Judge Kaplan:

The Government respectfully submits this letter to request that the Court enter the proposed protective order attached hereto as Exhibit A (the "Proposed Protective Order"). Given the nature of the discovery material, the Government believes that a limited protective order should be entered. The defendant does not consent to the entry of this order and has requested the opportunity to respond to the instant motion.

For the reasons set forth below, the Proposed Protective Order, which is minimally restrictive and would not hinder the defendant's efforts to defend himself at trial, is appropriate in this case.

## I.    Relevant Background

On May 8, 2024, a grand jury sitting in this District returned a sealed one-count Indictment charging the defendant with falsification of records, in violation of Title 18, United States Code, Section 1519. (Dkt. No. 3). On May 21, 2024, an S1 Superseding Information ("Information") was filed and unsealed, containing the same substantive charge. (Dkt. No. 8). The Information charges the defendant with one count of falsification of records, in violation of 18 U.S.C. § 1519.

### A.  Factual Background

As alleged in the Information, at all times relevant the defendant was employed by a seminary (the "Seminary") affiliated with a national religious denomination (the "Denomination") as a professor and the Interim Provost. In 2022, the Government began investigating allegations of sexual abuse and misconduct related to the Denomination and its affiliated entities, as well as the cover-up of such allegations by individuals associated with the Denomination and its affiliated entities. In connection with the investigation, a grand jury subpoena was issued to the Seminary requiring the production of, among other things, all documents in the Seminary's possession related to allegations of sexual abuse against anyone employed by or associated with the Seminary.

In November 2022, after the Seminary received the grand jury subpoena, an employee at the Seminary ("Employee-1") received a report regarding an allegation that a current Seminary student had committed sexual abuse. Employee-1 immediately brough the allegation to the attention of the Seminary's campus police, but the Seminary took no further action regarding the allegation and did not report it to the Government at the time.

In January 2023, Employee-1 created a document describing, among other things, the November 2022 allegation of sexual abuse and the Seminary's failure to take action regarding the allegation at the time it was reported to Employee-1 (the "Document"). Days later, on January 26, 2023, a member of the Seminary's executive staff ("Employee-2") met with Employee-1 and the defendant, during which Employee-2 directed Employee-1 to destroy the Document. The defendant was present during the conversation about the Document and heard Employee-2 direct Employee-1 to make the Document "go away."

On May 23, 2023, the defendant met with the Government in Fort Worth, Texas. During that meeting, the defendant falsely stated that he had not heard Employee-2 direct Employee-1 to destroy the Document during the January 26, 2023 meeting. Days after the defendant's meeting with the Government, on May 26, 2023, the defendant told another Seminary employee ("Employee-3") that the defendant had located a notebook in his office containing purportedly contemporaneous notes of the January 26, 2023 conversation (the "Notes"). The Notes falsely stated that on January 26, Employee-2 and Employee-1 had discussed providing the Document to a different department at the Seminary, but omitted the fact that Employee-2 had directed Employee-1 to destroy the Document. The defendant provided the Notes to Employee-3 to produce in response to the grand jury subpoena.

On June 20, 2023, the defendant met again with the Government in New York City and produced the original notebook containing the Notes. The defendant initially falsely stated that he had written the Notes contemporaneously to the conversation he witnessed between Employee-1 and Employee-2 on January 26, 2023. The defendant then falsely stated that he instead had written the Notes in April 2023. In truth, the defendant had not written the Notes contemporaneously with the January 26, 2023 conversation and instead had written the Notes following his May 23, 2023 meeting with the Government.

The following day, on June 21, 2023, the defendant testified under oath that on January 26, 2023, he had in fact heard Employee-2 instruct Employee-1 to make the Document "go away."

**B. Procedural Background & Discovery**

The defendant was arrested on May 16, 2024 and presented before the Honorable Valerie Figueredo, United States Magistrate Judge for the Southern District of New York. The defendant was arraigned before this Court on May 21, 2024 and entered a plea of not guilty. At the defendant's arraignment, the Court ordered that discovery be completed by June 4, 2024. Following the defendant's arraignment, however, the parties engaged in discussions towards a pretrial disposition. The parties agreed to defer the full production of discovery while they engaged in negotiations towards a resolution, but to assist with those discussions, the Government produced

a subset of Rule 16 discovery and early Jencks Act disclosure materials to defense counsel designated as "Attorney's Eyes Only" on June 3, 2024 and again on June 6, 2024.

In early July, unable to reach resolution, the Government indicated its intention to produce discovery in full pursuant to Rule 16, including re-designated discovery from the "Attorney's Eyes Only" production. The full production contains, among other things, sensitive information about allegations of sexual abuse and misconduct related to the Seminary, witness statements,[1] and documents and materials related to the Government's ongoing grand jury investigation of the Denomination and its affiliated entities.

On July 10, 2024, the Government sent a proposed protective order to defense counsel in contemplation of its full production of discovery. Later that day, defense counsel informed the Government that he would refuse to enter into the proposed protective order because he wanted to share certain discovery materials with the defendant's employer and with the press.

## II.    The Proposed Protective Order

The Proposed Protective Order seeks to limit public access to the discovery material in this case. The key provision in the Proposed Protective Order in this regard is as follows:

4. Disclosure Material shall not be disclosed by the defendant or defense counsel, including any successor counsel ("the defense") other than as set forth herein, and shall be used by the defense solely for purposes of defending this action. The defense shall not post any Disclosure Material on any Internet site or network site, including any social media site such as Facebook or Twitter, to which persons other than the parties hereto have access, and shall not disclose any Disclosure Material to the media.

Ex. A, ¶ 2.[2]

---

[1] The witness statements and certain related materials do not constitute Rule 16 discovery, but rather fall under the Jencks Act. To permit the defendant to understand the full scope of the charged conduct and the evidence that the Government will rely on in proving the charges, the Government intends to provide these statements—designated as confidential "Disclosure Material"—along with Rule 16 materials. However, absent the protections of the Proposed Protective Order, the Government will not make an early production of Jencks Act material and will only produce Rule 16 discovery at this time.

[2] The Proposed Protective Order refers to discovery as "Disclosure Material," which is defined in the Proposed Protective Order as follows: all "documents, objects and information, including electronically stored information ('ESI'), [that the Government has and will disclose to the defendants] pursuant to Federal Rule of Criminal Procedure 16, [and] 18 U.S.C. §3500," as well as all "exculpatory and impeachment material." Ex. A, ¶ 1. Such Disclosure Material "may include material that (i) affects the privacy, confidentiality and business interests of individuals and entities; (ii) would impede, if prematurely disclosed, the Government's ongoing investigation of uncharged individuals; (iii) would risk prejudicial pretrial publicity if publicly disseminated; (iv) may be produced with more limited redactions than would otherwise be necessary; and (v) that is

As discussed in further detail below, this provision is necessary and appropriate, and indeed is regularly included in protective orders in criminal cases in this District. *See, e.g.*, *United States v. Lopez*, 24 Cr. 350 (JPO) (July 10, 2024), Dkt. No. 17; *United Sates v. Guerrero*, 12 Cr. 141 (CM) (May 29, 2024), Dkt. No. 49; *United States v. Moore*, 24 Cr. 250 (MMG) (May 28, 2024), Dkt. No. 19; *United States v. Maxwell*, 20 Cr. 330 (AJN) (July 30, 2020), Dkt. No. 36; *United States v. Taveras*, 20 Cr. 240 (PAE), Doc. No. 15, at 2, ¶ 1 (Apr. 30, 2020); *United States v. Ray*, 20 Cr. 110 (LJL), (Mar. 3, 2020) Dkt. No. 12; *United States v. Young*, 20 Cr. 201 (KMW), (Apr. 2, 2020), Dkt. No. 11; *United States v. Martin*, 20 Cr. 136 (NRB), (Feb. 27, 2020), Dkt. No. 7; *United States v. Jeng*, 19 Cr. 800 (VM), (Jan. 16, 2020), Dkt. No. 22.

Notably, the Proposed Protective Order contains no limitation on the defendant's or defense counsel's ability to review the discovery or prepare a defense. Nor does the Proposed Protective Order impose any restrictions on how, and in what manner, the discovery can be stored or reviewed that would impact the ability to prepare a defense. Instead, the Proposed Protective Order merely restricts the dissemination of the discovery material to third parties (including the media).

## III.    Applicable Law

There is no presumptive right of public access to discovery materials exchanged between parties in a criminal case. *See United States v. Smith*, 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013) ("While protective orders related to judicial documents and criminal proceedings are subject to constitutional and common law scrutiny, protective orders related to discovery are not. This is because experience and logic show that there is no right of access to discovery materials."). Instead, "discovery is a private process between the parties to an action," and "courts generally view the documents or materials shared between them as outside the judicial function and therefore not presumptively accessible." *Id*. (collecting cases).

Accordingly, pursuant to Federal Rule of Criminal Procedure 16, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). "'[G]ood cause' does not mean unusual or extraordinary cause. Good cause for a protective order exists whenever 'a party shows that disclosure will result in a clearly defined, specific and serious injury'—such as compromising the 'privacy interests of innocent third parties,' causing a risk of harm to law enforcement or others, or 'imped[ing] ongoing [government] investigations.'" *United States v. Jackson*, No. 21 Cr. 537 (LTS), 2022 WL 582700, at *2 (S.D.N.Y. Feb. 25, 2022) (citation omitted).

The determination of whether and when a protective order is appropriate is a balancing act, with courts weighing the good cause supporting a requested protective order against the burden that "a protective order would be on [the defendant], being particularly sensitive to the extent to which a protective order would hinder [his] efforts to defend [himself] at trial." *Smith*, 985 F. Supp. 2d at 520. In striking the right balance, courts pay heed to the "pitfalls in allowing unfettered

---

not authorized to be disclosed to the public or disclosed beyond that which is necessary for the defense of this criminal case." *Id.*

public access to discovery materials," including: (1) "[undermining] the purpose of the discovery rules—to encourage the disclosure of information and materials to avoid unnecessary surprise and to level the playing field"; (2) "the risk that disclosure of some of the discovery materials could taint a trial"; and (3) "because the discovery rules are reciprocal, . . . the risk that unfettered public access could jeopardize a defendant's trial strategy." *Id.* And when, as here, when the parties' dispute centers on whether a defendant may *publicly* disseminate material, courts consider the fact that "the use of compulsory process [is] to facilitate orderly preparation for trial, not to educate or titillate the public." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982).

## IV.    Good Cause Exists for the Entry of the Proposed Protective Order

Here, good cause supports the entry of the Government's Proposed Protective Order, which is minimally restrictive. The Proposed Protective Order provides for three designations.[3] The first of these designations—"Disclosure Material"—would apply to the vast majority of the discovery materials in this case. For example, the Government anticipates categorizing materials related to the November 2022 allegation of sexual abuse, as well as other allegations of sexual harassment and misconduct at the Seminary as Disclosure Material. The Government also anticipates categorizing as Disclosure Material witness statements and material that constitute Jencks Act material but that the Government intends to produce with Rule 16 discovery. The Government's Disclosure Material includes material that affects the privacy and confidentiality of individuals and entities; would impede, if prematurely disclosed, the Government's ongoing investigation of uncharged individuals; and that could lead to the identification of witnesses and victims—who may be subject to intimidation or the risk of harm. In these circumstances, a protective order is appropriate. *See, e.g.*, *United States v. Baker*, No. 20-CR-288 (LJL), 2020 WL 4589808, at *2 (S.D.N.Y. Aug. 10, 2020) (finding good cause for a protective order "based on the risks that disclosure of certain material could improperly compromise the privacy and confidentiality of individuals and, if prematurely disclosed, could affect the Government's ongoing investigation of uncharged individuals").

Included in the Disclosure Material at issue here are documents that are not at all related to the November 2022 sexual abuse allegation or alleged cover-up thereof, but are related more generally to the underlying federal investigation and were produced by the Seminary following the Government's inquiry into the destruction of the Document. For example, the discovery materials include voluminous productions of email correspondence and Seminary files from various custodians associated with the Seminary, including the defendant. These materials are being produced because of the defendant's participation in the gathering and production of those materials in response to the Government's grand jury subpoena to the Seminary. In other words, these documents potentially relate to the defendant's participation in the federal investigation underlying the instant charge against him. Because the Government cannot identify which of these materials were identified or provided by the defendant in particular, the entirety of the Seminary's

---

[3] In addition to "Disclosure Material," the Proposed Protective Order contains "Attorney's Eyes Only" (AEO) and "Attorney Possession Only" (APO) designations. The Government contemplates potentially using these designations only for materials that do not directly implicate the defendant's offense conduct in this case and/or to efficiently produce voluminous data. At present, the Government does not contemplate designating any discovery materials AEO or APO.

production following the November 2022 abuse allegation is being reproduced to the defendant. Due to the sensitive nature of the subject matter of these documents, which relate to sexual abuse and misconduct, the designation as Disclosure Material is necessary.

On the other side of the balance, the Proposed Protective Order does not impede the defense's efforts to prepare a defense in any way. It imposes no restrictions on the defendant's ability to review the discovery on his own. It also gives defense counsel broad authority to disclose discovery material to other persons involved in preparing a defense and to use such discovery for purposes of defending this action. *See, e.g.*, Ex. A, ¶ 9. It imposes no restriction on the defendant's use or disclosure of materials that originally belonged to the defendant, or that is not designated under the Proposed Protective Order. In other words, the Proposed Protective Order would have no bearing at all on—much less "hinder"—the defendant's "efforts to defend [himself] at trial." *Smith*, 985 F. Supp. 2d at 520.

The Proposed Protective Order simply seeks to ensure that defense counsel and the defendant cannot, at this early stage of the case, publish discovery and/or witness statements on public websites, to the media, or to third parties in a manner that reveals or provides third parties with access to sensitive information, witness identities or information that would tend to identify those witnesses, and other nonpublic records. Defense counsel indicated his intention to do exactly that, however, informing the Government that he intended to use certain discovery materials to defend his client in the press and to provide information to the defendant's employer to persuade the employer to reinstate the defendant's employment. Such use of discovery materials would significantly jeopardize the Government's ongoing criminal investigation of uncharged individuals involved in the charged conduct, as well as individuals associated with the Seminary and Denomination more broadly. Furthermore, the defendant's proposed use of discovery materials undermines the purpose of discovery in criminal cases, which is to permit the defendant to prepare for trial, and "not to educate or titillate the public." *Joy*, 692 F.2d at 893.

The defendant proposes to redact the names of victims and witnesses before providing materials to, *inter alia*, the defendant's employer or the media. This proposal is insufficient. For one, with respect to the documents that the defendant has identified as of interest to share with his employer and/or the media, including the Document itself, redaction is insufficient to adequately protect the identities of victims and witnesses. Moreover, selective release by the defendant of certain materials would mislead and unnecessarily titillate the public in advance of trial. The Government's Proposed Protective Order strikes the proper balance between the good cause supporting the requested order and the extent to which such an order would hinder the defendant's efforts to defend himself at trial. Indeed, the Proposed Protective Order guards against the clearly defined, specific, and serious injuries described herein, with no discernible impact on the defendant's ability to prepare a defense.

**V.    Conclusion**

For the foregoing reasons, the Government submits that good cause exists to issue the Proposed Protective Order attached hereto as Exhibit A.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    _____
Jacqueline Kelly
Christy Slavik
Assistant United States Attorney
Southern District of New York
(212) 637-2456 / 1113

cc:  Counsel of Record (via ECF)