**LAW OFFICE OF SAM A. SCHMIDT**
29 BROADWAY Suite 1412
NEW YORK, N.Y. 10006
(212) 346-4666
facsimile (212) 346-4668
E-mail lawschmidt@aol.com

**Sam A. Schmidt, Esq.**

July 21, 2024

Honorable Lewis A. Kaplan, USDJ
United States District Court
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

Re: United States v. Queen
24 Cr. 291 (LAK)

Dear Judge Kaplan

This letter is in response to the government's motion for a protective order in the above case. It was not clear in the government's letter, that the issue concerns a very limited number of documents and that personal information would be redacted from those documents.

**Relevant Background**

On May 16, 2024, Matthew Queen surrendered on a sealed indictment charging him with one count of obstruction of justice under 18 U.S. C. § 1519 and entered a not guilty plea. On May 22, 2024, he pled not guilty to the superseding information that would be filed publicly.[1] The government also issued a press release on May 21, 2024 that went beyond the allegations in the information. Exhibit A. The press release contained factual allegations that are inaccurate, misrepresented some facts, and cast Mr. Queen in a more negative light than was

---

[1] The original indictment included the name of the seminary involved in the case. The government wanted to use a generic name for the seminary in the accusatory instrument. Mr. Queen consented to permit an information to be filed not requiring the government to re-present the case to a grand jury.

1

necessary to prosecute him and included a claim of an additional uncharged crime of conspiracy.

Regional media and other media related to and covering the Southern Baptist Convention carried articles of Mr. Queen's arrest using the information in the indictment and press release. Mr. Queen and counsel received numerous telephone calls from the media. A brief response to the media was issued on Mr. Queen's behalf.

After his arraignment, counsel for Mr. Queen spoke to a number of witnesses concerning some of the events alleged in the information and press release. All were aware of the specific seminary, the parties mentioned in the information as Employee 1 and 2, and others who were witnesses of the alleged events, including those whom the government perceives are persons subject to continued investigation. The seminary is a small learning community where everyone knows each other's business. The seminary issued a press release that identified Employee 1 and 2.

Counsel has received some discovery material from the government and some material that it claims to be early Jencks Act material under an agreement with the government that the material would be for attorney eyes only. Having interviewed Mr. Queen and other potential witnesses, counsel would describe some of the discovery material and much of the Jencks Act material as Brady material, that is, material that is favorable to the defendant, supports his defense, and renders some of the government allegations as misleading or inaccurate. Counsel should be permitted to correct the inaccurate and misleading public statements made by the government supported by documents.

As a result of the information and press release, Mr. Queen has been suspended from his position as the Lead Pastor of Friendly Avenue Baptist Church, which he has held since March 1, 2024. His reputation has been damaged, he was

required to withdraw at least one contribution to a forthcoming publication, and he has had previously arranged speaking engagements canceled, affecting potential honoraria. Counsel seeks only to be able to provide a limited number of documents to the church's committee investigating the allegations to determine whether he will be reinstated prior to trial, and to respond to members of the press in a manner that does not endanger any person or witness, nor impedes any possible continuing investigation.[2]

Because of the government motion for a protective order and that counsel agreed that the documents were for "Attorney Eyes Only" I will not publicly file any document received solely from the government but will refer to information that (1) is Brady material, (2) supports Mr. Queen's defense, and/or (3) demonstrates that the indictment and press release contain incorrect or misleading statements.  Any information obtained solely from the material received from the government as "Attorney Eyes Only" will be redacted for the public filing of this document. Defendant requests that your Honor permit the filing of the unredacted submission.[3]

Though the press release states that Employee 1 "received a report" in November 2022, there is no physical report. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. The document created by Employee 1 was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[2] Indeed, this is the only prosecution that has resulted from a two year investigation of the Southern Baptist Convention by the FBI and United States Attorney from the Southern District of New York.  Further there are only 2 or 3 potential subjects of this investigation and each of them are very aware that they are potential subjects.

[3] The exhibits with the proposed redactions will retain the letter of the original exhibit and will add "1" such as Exhibit B1.

███████████████████████████████████████████

This document indicates that ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████[4] █████████████████

████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████

████████████████████████

    █████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

    The press release also claimed that Mr. Queen's "actions deliberately violated a court order and delayed justice of the sexual abuse victims." There is no allegation that Mr. Queen, in any way, violated the court order, i.e. the subpoena, to prevent any seminary documents from being provided to the government. Nor did he delay justice for any victims of sexual abuse. The local police were investigating and ultimately obtained an arrest warrant. In fact, on January 24, 2023, when the seminary became aware of a warrant for the arrest of one of its students, it issued a public statement, assisted with the surrender of the alleged offender that afternoon, and immediately suspended him.

    Mr. Queen, who became the interim provost earlier that month, first became

---

[4] ████████████████████████████████████████████████████████████████████████████

aware of the allegations only after the seminary issued its public notice the afternoon of January 24, 2023. The seminary's police department assisted in the arrest of the student that afternoon. One day later, Employee 1 dropped off the document, Exhibit B, at the Office of the President where Employee 2 received it. The document ██████████████████████████████████████████████ ████████████████████.

     Apparently on January 26, 2023, Employee 1 was contacted ████████ by the alleged victim, who asked to meet with her. Employee 1 called Mr. Queen, the new acting provost, and asked whether she should meet with her. After being advised by the seminary's president, he agreed to meet Employee 1 after chapel. With Employee 2, Mr. Queen met with Employee 1 near the front of the chapel, immediately after the completion of chapel, with people walking by them during the conversation. As instructed by the president, Mr. Queen told Employee 1 that if the matter the alleged victim wanted to talk about concerned the alleged sexual abuse, she should tell victim to speak to the Burleson Police Department. If it related to some other unrelated matter concerning the seminary, then Employee 1 should speak to her. If it was about a personal matter, then it was at Employee 1's discretion whether to speak to her or not.

     After Mr. Queen provided the advice, Employee 1 and Employee 2 discussed the document that Employee-1 had left for Employee 2 the day before. Mr. Queen was present, though his attention was directed to emails in his mobile telephone because the conversation did not involve him. In subsequent conversations with many others, including in his interviews with the government, Mr. Queen repeatedly explained that he never heard Employee 2 tell Employee 1 to destroy the document.

     In the first interview with the government he was repeatedly asked if Employee 2 used certain phrases or expressions, and did acknowledge that the

5

expression "We are not having this conversation" sounded vaguely familiar. In conversations relating to the meeting with Employee 1 and Employee 2, including his conversations with the government and his testimony in the grand jury, Mr. Queen has maintained that he never understood that Employee 2's statements indicated that he wanted Employee 1 to destroy the document, but that the document should not be kept in the Office of the President and instead should go to the Dean of Students. In fact, the document dropped off by Employee 1 to Employee 2 was never destroyed and ████████████████████████████████████████████████████████████████. ████████ Mr. Queen understands that the document was provided to the seminary president, the attorney for the seminary and Employee 3.

After being told in February 2023 by Employee 1 that she made contemporaneous notes, Mr. Queen falsely told her he did as well. In a response to Employee 3's question weeks before the first interview with the government, Mr. Queen falsely agreed that his notes were made contemporaneous with the January meeting with Employee 1 and Employee 2. He was told that he would have to produce the notes. At that time, there were no notes about this meeting to produce.

In its press release, the government, referring to the June 20, 2023 interview it had with Mr. Queen, stated that [Mr. Queen claimed he] "had written the notes contemporaneously with the January 26, 2023 meeting," and later said the notes were written later when "[i]n truth and in fact, QUEEN had written the notes following his initial May 2023 interview with the U.S. Attorney's Office and the FBI." In contrast, ████████████████████████████████████████ Mr. Queen said that the notes were written in April. ████████, and then later ████████████████████████████████████████ ████████ OJ g admitted that the notes he wrote were not written in mid-April of 2023 as he stated previously, but in May.

6

Having been upset when questioned harshly by the government on May 23, being fearful, being told by one of the seminary's attorneys to pray and meditate to remember, and believing that the government was correct - as a very religious person he did pray and meditate the night of May 24. Mr. Queen woke up from a dream believing that he remembered more of the conversation, as previously suggested by the government, including Employee 2's use of the term "this needs to go away."

On May 25, 2023, Mr. Queen told of his new recollections to the attorney retained by the seminary to represent potential witnesses employed by the seminary, and he was told that this would be reported to the government. After being told that the government would want to talk to him again, Mr. Queen shortly thereafter wrote the notes, which accurately reflect his recollections prior to the night of May 24, in his notebook and provided it to both the attorney and Employee 3. On June 1, 2023, the attorney informed the government about Mr. Queen's new recollections, and we believe he provided them with the notes as well. ▓▓▓▓▓

**Legal Analysis**

Rule 16 of the Federal Rules of Criminal Procedure "places no express limits on the purposes for which discoverable material can be used." *United States v. Johnson*, 314 F.Supp.3d 248, 255 (D.DC 2018). By default, either party may – within the bounds of the Federal Rules of Criminal Procedure, the governing Rules of Professional Conduct, and the Local Rules of this Court – disclose discovery to third parties as necessary to represent its clients' interests.

In limited circumstances, Rule 16 permits the entry of a Protective Order. Rule 16(d)(1) provides, "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief" (emphasis added). To restrict the defense's access to discovery, the Government bears the

7

burden of establishing "good cause" for the limitations on disclosure imposed by the order. See *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007); see also *Johnson*, 314 F.Supp.3d at 253 ("Where the defendant objects to the government's proposed method of conducting discovery, however, the burden of showing good cause lies squarely on the government."). This is true even when parties consent to the language contained in a stipulated order. *See United States v. Smith*, 985 F.Supp.2d 506, 523 (SDNY 2013).

In determining whether "good cause" exists to implement a protective order, courts look to whether the party seeking a protective order has shown that absent a Protective Order "disclosure will result in a clearly defined, specific and serious injury." Id., quoting, *In re Terrorist Attacks on September 11, 2001*, 454 F.Supp.2d 220, 222 (SDNY 2006) (internal quotation marks omitted); *see also United States v. Concord Mgmt. & Consulting LLC*, 404 F.Supp.3d 67, 74 (D.DC 2019) ("Good cause for a protective order 'is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure.' ") (internal citation omitted). A sufficient showing "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Smith*, 985 F.Supp.2d at 523, citing, *United States v. Gangi*, 1998 WL 226196, at \*2 (SDNY May 4, 1998) (quoting, *Anderson v. Cryovac*, Inc., 805 F.2d 1, 8 [1st Cir. 1986]).

That protective orders are issued regularly is of no significance. There is no danger to any persons involved in this case or any related matter. In fact, all the potential subjects and witnesses know who they are and are known to each other and to the entire seminary community and much of the membership of the Southern Baptist convention because of media coverage.

Unlike *United States v. Baker*, N0. 20-CR-288 (LJL) 2020 WL 4589808 (SDNY August 10, 2020), this does not involve a violent crime. The defendant is a

8

minister with no criminal record and the offense alleges providing a false document with intent to obstruct an investigation. While the government appears to argue that it is a nationwide investigation, the particular investigation is limited and all potential subjects know who they are and understand the nature of the case.

Defendant has not and does not object to the protective order as it relates to documents, whether hard copies or electronic, that do not relate to this particular case. Defendant has indicated that the documents that he presently objects to being subject to the protective order are very limited and will be redacted for privacy. Mr. Queen certainly does not wish to titillate the public, but he does wish to respond to the false and misleading statements publicly released by the government that have unfairly caused him great emotional, psychological, and financial harm. In fact, it was the government's press release that had the tendency to titillate! There has been no showing of the need for a protective order as it relates to the few documents that the defendant argues should not be part of any protective order. Counsel has indicated that personal information will be redacted.

**Conclusion**

The documents that the defendant may wish to provide to the committee at his church and to the press in response to further inquiries (or information from such documents) are presently limited ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Therefore, the defendant respectfully requests that any protective order not

---

[5] The attorney who represented Mr. Queen at the May and June 2023 interviews with the government passed away on June 4, 2024. We are making efforts to obtain notes and other potential evidence from his estate.

include the documents as set forth above with redactions of personal information. Should counsel receive any other document that he believes should not be subject to the protective order, he will discuss it with the government and if no resolution is possible, raise the issue before your Honor.

Further, the defendant respectfully requests that this unredacted submission be publicly filed.

                                        Respectfully submitted,

                                        Sam A. Schmidt, Esq.
                                        Attorney for Matthew Queen