UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA,


- against -


MATTHEW QUEEN

                                           Defendant.

------------------------------------------------------------X


MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS INFORMATION


24 Cr. 291 (LAK)


**Sam A. Schmidt, Esq.**
**29  Broadway, Suite 1412**
**New York, New York 10006**
**(212) 346-4666**


*Counsel For Defendant*
*Matthew Queen*

INTRODUCTION

This Memorandum of Law is submitted in support of Defendant MATTHEW QUEEN'S  motion to dismiss the information and the preceding redacted indictment for failure to state an offense pursuant to Fed. R. Crim. P. Rule 12.  Rule 12 authorizes a defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."  A motion to dismiss and information or indictment must be made prior to trial,  Rule 12(b)(3)(B)(v), though a motion that the court lacks jurisdiction may be made at any time.  The failure to charge an offense may be treated as a jurisdictional defect. *United States v. Foley,* 73 F.3d 484, 488 (2d Cir. 1996). Rule 12(b)(2). Since this motion will avoid the need for further litigation should it be granted, the sooner the motion is made, the better.

**Background**[1]

In the Fall of 2022, the government served a grand jury subpoena on entities associated with the Southern Baptist Convention for any documents relating to claims of sexual abuse and misconduct.  One of the entities was the Southwestern Baptist Theological Seminary (SWBTS), where Matthew Queen was a professor and later became the interim provost.

On November 3,  2022, Employee 1 spoke on the telephone to a ███████ ████████████████████████████████████████████████████████████████ ███████told her that she had filed charges of sexual abuse against a student at

---

[1] All redactions are made pursuant to a request by the government and pursuant to an Order of the Court.

SWBTS. *See* Exhibit A and Exhibit B.[2] Employee 1 was informed that the ██████Police Department investigation was concluding and the detectives were seeking a warrant for the alleged perpetrator. Exhibit B. Employee 1 was also informed that███████████████████████████████████████████ ████████████████████. Exhibit B.

Employee 1 then contacted the Chief of Police at the seminary and reported the above information to him.█████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██Exhibit B.

In January 2023, the Chief of Police was informed that there was a warrant for the arrest of the student. His office contacted the██████ Police Department to confirm. After it was confirmed, arrangements were immediately made for the student to surrender at the office of the Chief of Police of the seminary and the student surrendered.

Dr. Queen, who had become the interim provost earlier that month, first became aware of the allegations only after the seminary issued its public notice the afternoon of January 24, 2023. The day after the arrest of the student, Employee1 dropped off a document (the Document), Exhibit B, at the Office of the President where Employee 2, the Chief of Staff to the President, received it. The document contains nothing that indicates any wrongdoing on the part of the seminary or any

---

[2] All exhibits have been filed under seal at the request of the government and by Order of the Court.

employee.

On January 26, 2023, Employee 1 was contacted by email by the alleged victim, who asked to meet with her. Employee 1 contacted Dr. Queen, the new acting provost, and asked whether she should meet with her. After being advised by the seminary's president, Dr. Queen agreed to meet Employee 1 after chapel.

With Employee 2, Dr. Queen met with Employee 1 near the front of the chapel immediately after the completion of chapel, while people were walking by them during the conversation. As instructed by the president, Dr. Queen told Employee 1 that if the matter the alleged victim wanted to talk about concerned the alleged sexual abuse, she should tell victim to speak to the█████████ Police Department. If it related to some other unrelated matter concerning the seminary, then Employee 1 should speak to her. If it was about a personal matter, then it was at Employee 1's discretion whether to speak to her or not.

After Dr. Queen provided the advice, Employee 1 and Employee 2 discussed the Document that Employee 1 had left for Employee 2 the day before. Dr. Queen was present, though his attention was directed to emails in his mobile telephone because the conversation did not involve him. In subsequent conversations with others, including in his interviews with the government, Dr. Queen repeatedly explained that he never heard Employee 2 tell Employee 1 to destroy the document.

On February 13, 2023, Dr. Queen first learned of the claims against the Chief of Staff and the Chief of Police made by Employee 1.

Days later Employee 1 asked to meet with Dr. Queen. At this meeting it was confirmed that Employee 1 and Dr. Queen had different recollections of the

3

January 26, 2023 discussion. She also stated that she had made contemporaneous notes, Dr. Queen told her he had as well.  He had not.

In a meeting with Employee 3 weeks before the first interview with the government, Dr. Queen falsely stated that he made notes of the January 26, 2023 meeting with Employee 1 and Employee 2 and at a later date he acknowledged that his notes were made contemporaneous with the  meeting.  Dr. Queen was told that he would have to produce the notes pursuant to the subpoena received by the seminary in the Fall of 2022. At that time, Dr. Queen had nothing to produce because had made no notes about the January 26, 2023 meeting.

In conversations relating to the meeting with Employee 1 and Employee 2, including his conversations with the government and his testimony in the grand jury, Dr. Queen has maintained that he never understood that Employee 2's statements indicated that he wanted Employee 1 to destroy the document, but that the document should not be kept in the Office of the President and instead should go to the Dean of Students. In fact, the document dropped off by Employee 1 to Employee 2  was never destroyed and a█████████████████████████████████████████████████████████████████Exhibit B.

In the first interview with the government on May 23, 2023, he was repeatedly asked if Employee 2 used certain phrases or expressions when talking to Employee 1.  Dr. Queen acknowledged that the expression████████████████████████████████████████████████████████████. Exhibit C.

During the May 23, 2023 interview, the government questioners made it clear that they did not believe Dr. Queen that  he had no recollection that

Employee 2 had said "make it disappear" or destroy it.  Further, after the interview Dr. Queen was strongly urged by one of the seminary's attorneys that the government did not believe him and he should  pray and meditate to remember.

Being upset and believing that his lack of memory was at fault, as a very religious person he did pray and meditate the night of May 24.  Dr. Queen awoke believing that he remembered more of the conversation, including the phrases used by the government in its questioning.

On May 25, 2023, Dr. Queen told the attorney retained by the seminary to represent potential witnesses employed by the seminary of his new recollections. The attorney told him that this would be reported to the government and that the government would want to talk to him again. The next day Dr. Queen wrote the Notes in his notebook. Exhibit D.**[3]**  These notes accurately reflected his recollections prior to the night of May 24. He provided copies of the notebook page to both the attorney and Employee 3.

On June 1, 2023, the attorney informed the government about Dr. Queen's new recollections, and we believe he provided them with the notes as well. Exhibit E. The new recollections included ███████████████████████████████ ██████████████████████████████████████████████████Ex hibit E.  It is believed that the government received a copy of  Dr. Queen's Notes, Exhibit D,  shortly after the telephone call ended.

Notes taken by an FBI agent during the June 20, 2023 interview of  Dr. Queen and the subsequent report  indicate that███████████████████████

---

[3] ███████████████████████████████████████████████████████

████████████████████.  Exhibit F.  However████████████████████

████████████████████Exhibit G.  ████████████████████

████████████████████████████████████████████████████[4]

As cited in the information and indictment, the offense conduct is "Falsification of Records," i.e., the preparation of notes relating to a January 26, 2023 conversation.  The alleged falsification is the fact of omission "that Employee 2 had directed Employee 1 to destroy the document."  Information at paragraph 7.

The information and indictment further state that "the defendant caused a copy of the document of the Notes to be provided to the U.S. Attorney's Office" in or about June 2023.  That date is also cited in the "Statutory Allegation" as the time when the offense occurred.

Though Dr. Queen denies it, the government's stated allegations may be legally sufficient for the inference that the defendant's omission was done with the intent to impede, obstruct and influence the investigation.  There is, however, no allegation that the "false" information was material to the investigation.

**Legal Analysis**

Counsel is very much aware that there is no motion for a summary judgment in criminal cases and that motions to dismiss an indictment are rarely made and even more rarely granted.  All that is necessary for an indictment or information to be sufficient is that it must

charge[ ] a crime with sufficient precision to inform the defendant

---

[4]  On June 21, 2023, the government called Dr. Queen as a witness in the grand jury where he testified consistent with his new memory.

> of the charges he must meet and with enough detail that he may
> plead double jeopardy in a future prosecution based on the same set
> of events." *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d
> Cir.1992). Nevertheless, "an indictment need do little more than to
> track the language of the statute charged and state the time and
> place (in approximate terms) of the alleged crime." Id.  (internal
> quotation marks omitted).

*United States v. Alphonso* 143 F.3d 772, 776 (2d Cir. 1998).  Under 18 U.S.C. § 1519

it is an offense for anyone who

> knowingly alters, destroys, mutilates, conceals, covers up, falsifies,
> or makes a false entry in any record, document, or tangible object
> with the intent to impede, obstruct, or influence the investigation or
> proper administration of any matter within the jurisdiction of any
> department or agency of the United States or any case filed ....

Whether an indictment or information with just the statutory language would be

sufficient is irrelevant here because the government chose to include three pages

of background of the offense. Therefore, the description of the offense includes

more than the statutory language and the district court must consider the entire

indictment or information.

**Availability of Motion to Dismiss**

While moving to dismiss indictments by a motion pursuant to  Fed. R. Crim.

P. 12(b)(1) is infrequent, it is permitted and has been granted in the Second Circuit

and many other circuits.  *United States v. Mennuti,*  639 F.2d 107 (2d Cir. 1981) ;

*United States v. Pirro,* 212 F.3d 86, 91–92 (2d Cir.2000); *United States  v.

Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012).  *See also  United States v. Yakou*,

428 F.3d 241, 246 (D.C. Cir. 2005) ; *United States v. Hall*, 20 F.3d 1084, 1087–88

(10th Cir. 1994); *United States v. Levin*, 973 F.2d F.2d 463, 470 (6th Cir. 1992)

(use of undisputed extrinsic evidence) ; *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) ; *United States v. Brown*, 925 F.2d 1301, 1304 (10th Cir. 1991). "Before trial, a defendant 'may raise by ... motion any defense, objection, or request that the court can determine without a trial on the merits,' including a motion alleging 'a defect in the indictment.' " *United States v. Aiyer*, 33 F.4th 97, 116 (2d Cir. 2022) (quoting Fed. R. Crim. P. 12(b)(1) and (b)(3)(B)).[5]

Thus, district courts considering Rule 12 motions can "make factual determinations in matters that do not implicate the general issue of a defendant's guilt," but "cannot resolve 'a factual dispute that is inextricably intertwined with a defendant's potential culpability,' as that is a role reserved for the jury." *Aiyer,* 33 F.4th at 116 (quoting *United States v. Sampson*, 898 F.3d 270, 281 (2d Cir. 2018)). However, when a defendant moves to dismiss before trial, the indictment is subject to an exacting review and may not be liberally construed in favor of validity. *See Pirro*, 212 F.3d at 92. ("The timing of the defendant's objection is important to the level of scrutiny employed.")

When undisputed facts demonstrate the defect in the indictment, then the district court does not impinge on the role reserved for the jury. *Yakou*, 428 F.3d at 247. ("...the existence of undisputed facts obviate[s] the need for the district

---

[5]  In footnote 3, of *Aiyer* the Second Circuit noted that

 On appeal, both the Government and Aleynikov frame their arguments in terms of the sufficiency of the indictment rather than the sufficiency of the evidence. Because the result and analysis would be the same under either formulation, for the purposes of this opinion we adopt the one used by the parties, and do not decide which is doctrinally more sound.

Id. at 76.

court to make factual determinations properly reserved for the jury.")

**Alleged Omissions As the Basis of the Charge**

The defendant does not dispute that omissions in a document, under certain circumstances, can fall within the purview of 18 U.S.C. § 1519. In *United States v. Rowland*, 826 F.3d 100, 110-111 (2d Cir. 2016) the court found that the false contract that misrepresented the relationship of the parties was a "falsified" document. See also *United States v. Jesperson*, 65 F.3d 993 (2d Cir. 1995). While the defendant disputes that the Notes were in any way false or done with intent to obstruct, under usual circumstances, the resolution of this dispute may be a factual decision made by a jury.

However, the Notes, Exhibit D, cannot be viewed in isolation. The language of the indictment and information includes that the defendant "caused a copy of the 'Notes to be provided to the U.S. Attorney's Office' " in June of 2023. Further, in its public press release, the government reiterated they were provided with the Notes in June 2023.

██████████████████████████████████████████████

████████████████████, Exhibit

E,████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████

██████████████and███████████████████████████████

██████████████████

Based upon the timing of the conversation with the attorneys, the allegation in the indictment and information that the government received the Notes in June

2023, and the newly modified Rule of Completeness, F.R.E. 106, the notes and the attorney's statement are part of the same "document."

> If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part-or any other statement-that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection.

Viewed together, there is no omission, therefore no falsification of a record.

Here, Dr. Queen caused to be provided to the government contemporaneously all the information it sought and believed was wrongfully omitted in the Notes with the intent to obstruct the investigation, as described in the indictment and information.  Exhibit E.[6]  Though providing that information makes it absolutely clear that Dr. Queen did not have any intent to impede, obstruct or influence the investigation, pursuant to Second Circuit case law, it is a close call whether such a finding is a "factual dispute that is inextricably intertwined with a defendant's potential culpability" that  may be required to be made by a jury.

However, the contemporaneous statements by his attorney to the government with the production of the Notes demonstrates that there is no omission or falsity in the document.  Therefore, the Notes cannot be a "falsified" document. Since the indictment and information clearly state that the offense is the "Falsification of Records," without a falsified  document there is no crime and such a determination does not interfere with the role preserved for a jury.

---

[6]  As counsel has previously noted, the attorney representing Mr. Queen at the time of the conversation with the government passed away on June 3, 2024, a few weeks after counsel was retained. We are still seeking documents from his office related to his conversations with Mr. Queen and with the government.

**Materiality**

A statement is material if it has "a natural tendency to influence, or be capable of influencing, the decision of the decision making body to which it was addressed, or if it is capable of distracting government investigators' attention away from a critical matter." *United States v. Adekanbi*, 675 F.3d 178, 182 (2d Cir. 2012). Citations omitted.

There is no mention of the need for the alleged false information to be material in either the indictment or information. Some circuits interpret 18 U.S.C. § 1519 as not requiring proof of materiality to commit the offense. See e.g. *United States v. Moyer*, 674 F.3d 192, 207-08 (3d Cir. 2012). The Second Circuit does. *United States v. Ionic Management SA*, 555 F.3d 303, 310 (2d Cir. 2009). In *Ionic Management*, the Second Circuit noted that because the defendant provided its request to charge and did not request a materiality instruction, the district court's failure to instruct the jury that falsification had to be material did not amount to plain error and as such, the failure did not constructively amend the indictment. *Ibid.*

While the determination of whether Dr. Queen possessed the intent to impede, obstruct or influence may require that we await a jury determination, the fact that the government possessed all of the statements allegedly made during the conversation between Employee 1 and Employee 2 when Dr. Queen was present, makes the omission of some of the alleged statements in the Notes not material to the investigation.

CONCLUSION

Based on the foregoing, this Court should grant defendant's motion to dismiss the information and indictment.


DATED:      August  29, 2024
            New York, New York

                              Respectfully submitted,
                              _____/s/_____
                              Sam A. Schmidt, Esq.
                              Attorney for Matthew Queen