IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW QUEEN,<br><br>    Defendant. | Case No. 24 Cr. 291 (LAK) |

**NON-PARTY SOUTHWESTERN BAPTIST THEOLOGICAL
SEMINARY'S MOTION TO QUASH OR MODIFY SUBPOENA**

TO THE HONORABLE LEWIS A. KAPLAN:

Pursuant to Federal Rule of Criminal Procedure 17(c)(2), non-party Southwestern Baptist Theological Seminary ("SWBTS" or "the Seminary") requests that the Court quash or modify the subpoena for documents served on the Seminary by defendant Matthew Queen ("Queen") on or about December 16, 2024 (the "Subpoena"). The Subpoena commands SWBTS to produce "[d]ocuments, electronic or hard copies relating to representation of Matthew Queen by Brian Poe, Esq. that includes notes and emails of contact between Mr. Poe and Mr. Queen or DOJ, and notes of conv[ersations] between Mr. Queen and DOJ." A copy of the Subpoena is attached to this motion as Exhibit 1.

The documents requested relate to Mr. Poe's former representation of SWBTS as an entity.[1] Therefore, as set forth below, the Subpoena should be quashed or modified as unreasonable and oppressive pursuant to Rule 17(c)(2), as it seeks materials subject to one or more privileges and protections, specifically, the attorney-client privilege and the attorney work product doctrine, or materials easily procurable from a party to this case. Because the Seminary's production of those materials would result in its waiver of applicable privileges, it moves the Court to quash or

---

[1] Mr. Poe unexpectedly passed earlier this year, resulting in the Seminary's retention of moving counsel.

**NON-PARTY SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY'S
MOTION TO QUASH OR MODIFY SUBPOENA – PAGE 1**

modify the Subpoena to exclude all materials subject to privilege or that can be secured elsewhere by the defendant.

I. **FACTUAL BACKGROUND**

The Seminary is a Baptist theological institute located in Fort Worth, Texas. It was established in 1908 and is affiliated with the Southern Baptist Convention, a national religious denomination (the "Denomination").

In 2022, the grand jury for the Southern District of New York began investigating allegations of sexual abuse and misconduct related to the Denomination and the alleged cover-up of such allegations by individuals associated with the Denomination and its affiliates. ECF No. 3. In October 2022, the grand jury issued a subpoena to the Seminary (the "2022 Subpoena") requiring the production of, among other things, all documents in its possession related to allegations of sexual abuse against anyone employed by or associated with the Seminary. *Id.*

The Seminary engaged Brian Poe to represent it in connection with the 2022 Subpoena and related investigation. The letter of engagement between the Seminary and Mr. Poe is attached to this motion as Exhibit 2. The Seminary, as an entity, engaged Mr. Poe as counsel; he did not represent any Seminary personnel in their individual capacities. *Id.*

Over the course of his representation of the Seminary, Mr. Poe communicated with the U.S. Attorney's Office ("USAO"), met and communicated with various high level employees of the Seminary, attended various interviews with the USAO and Seminary employees, and maintained routine attorney notes documenting his representation. Importantly, defendant Queen, a former professor and Interim Provost at the Seminary, met with the USAO in May and June of 2023 and testified before the grand jury on or about June 21, 2023. ECF No. 3. Mr. Poe attended these meetings and traveled to New York for Queen's grand jury appearance, always in his capacity as Seminary counsel.

After his grand jury testimony, it became clear that Queen was a target of the grand jury's investigation. Consequently, Queen resigned from his position as Interim Provost with the Seminary on or about June 26, 2023 and was placed on administrative leave. In February 2024, Queen resigned from the Seminary in all capacities.

On May 8, 2024, the grand jury for the Southern District of New York indicted Queen on one count of falsification of records, in violation of Title 18, United States Code, Section 1519. ECF No. 1. Queen retained individual defense counsel, Sam Schmidt, to represent him in connection with the indictment. Mr. Poe never represented Queen individually or in connection with the indictment against him.

As stated above, Mr. Poe passed away on June 3, 2024. The Seminary retained new counsel the following week.[2]

The government charged Queen by superseding information on October 16, 2024, charging him with one count of falsification of records, in violation of Title 18, United States Code, Section 1519, and one count of making false statements, in violation of Title 18, United States Code, Section 1001(a)(2). ECF No. 52. He pled guilty that day to the latter charge. *See* Oct. 16, 2024, Minute Entries for proceedings held before magistrate Judge Sarah L. Cave. Sentencing is scheduled for February 26, 2025. *Id.*

On December 16, 2024, the Seminary was served with the attached Subpoena. Contending the requested documents are "necessary and relevant" for his sentencing (ECF No. 61), Queen seeks production of certain documents, all of which are either (1) protected from disclosure by the

---

[2] Seminary counsel is based in Dallas, Texas and is not admitted in the Southern District of New York. In the interest of time, a Vedder Price attorney admitted in the Southern District of New York is filing this motion for the Seminary. Should this motion be set for a hearing, counsel will submit a Motion for Admission Pro Hac Vice.

attorney-client and attorney work product privileges, or (2) easily procurable from a party to this case.

## II. ARGUMENT

Compliance with the Subpoena would be unreasonable or oppressive for the Seminary because the requested documents are protected by validly-held privileges, namely, the attorney-client and attorney work product privileges, or are procurable from a party to this case. Therefore, the Seminary requests that that the Court quash or modify the Subpoena.

### (a) Standard

Federal Rule of Criminal Procedure 17(c)(1) provides, in pertinent part, that a "subpoena may order the witness to produce any books, papers, documents, data," or other designated objects. But Rule 17(c) "was not intended to provide an additional means of discovery" for a criminal defendant, *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951), and thus may not be used to conduct a "general fishing expedition." *United States v. Nixon*, 418 U.S. 683, 700 (1974) (internal quotations omitted).

Courts may quash or modify a subpoena if compliance would be unreasonable or oppressive, or where it is clear that the party seeking production has not met its burden of demonstrating the threshold requirements for issuance have been met. *See* FED. R. CRIM. P. 17(c)(2); *United States v. Weisberg*, 2011 WL 1327689 at *4 (E.D.N.Y. 2011).

To survive a motion to quash, the party seeking production must prove, by a preponderance of the evidence, that its subpoena satisfies the threshold test set forth in *Nixon*.[3] Under *Nixon*, "the materials sought to be produced" must be (1) relevant, (2) admissible, (3) specifically identified, and (4) not otherwise procurable. 418 U.S. at 699 – 700. If these factors are not met, the subpoena

---

[3] The Second Circuit regularly applies the *Nixon* analysis to third-party subpoenas. *United States v. Barnes*, 2008 WL 9359654 at *3 (S.D.N.Y. 2008).

is deemed "unreasonable or oppressive" and must be quashed under Rule 17(c)(2). *Id.* (explaining these factors as "burdens" the seeking party must "carry"). Moreover, a defendant cannot issue a trial subpoena to harass witnesses or pierce validly held privileges. *See Barnes*, 2008 WL 9359654 at *1; *see also United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995); *United States v. Wilson*, 571 F.Supp. 1417, 1421 (S.D.N.Y. 1983) (the attorney-client privilege operates as an independent constraint to Rule 17(c) subpoena power). It is the Court's responsibility to ensure that a Rule 17 subpoena is for a proper purpose and complies with the requirements of Rule 17(c). *United States v. Weissman*, 2002 WL 31875410, at *1 (S.D.N.Y. 2002).

Here, all of the materials sought by Queen are either (1) protected from disclosure by the attorney-client or attorney work product privileges or (2) easily procurable from a party to this case.

### (b) The Subpoena is Unreasonable or Oppressive Because it Improperly Attempts to Interfere with Validly Held Privileges.

The Subpoena is unreasonable or oppressive because it attempts to compel production of materials protected by the attorney-client privilege[4] and attorney work product privilege.[5] Specifically, it seeks "notes" of contact between Mr. Poe and Queen or the DOJ and "notes" of conversations between Queen and the DOJ. *See* Exhibit 1. It also requests emails of contact between Mr. Poe and Queen or the DOJ. *Id.*

---

[4] The elements necessary to establish a claim of attorney-client privilege are settled. A document or communication is privileged where legal advice of any kind is sought from a professional legal adviser in his capacity as such, and where the communications relate to that purpose, are made by the client in confidence, and are, at the client's "instance permanently protected" from disclosure by client or the legal adviser. *United States v. Stein*, 488 F.Supp.2d 350, 367 (S.D.N.Y. 2007) (internal quotations and citations omitted); *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (citing 8 *Wigmore on Evidence* § 2292, at 554 (McNaughton ed. 1961)).

[5] Work product material, *i.e.,* documents that contain attorney notes, drafts, and other working papers, are shielded from production if the material "[a]t its core ... shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975).

A Rule 17(c) subpoena is improper and/or should be quashed if it seeks materials protected by the attorney-client privilege or work-product doctrine. In *United States v. Xu*, the defendant, an owner and operator of an airline company, was charged with participating in an alleged kickback scheme defrauding Polar Air Cargo Worldwide, Inc. ("Polar") of millions of dollars. 2024 WL 4504352 at *1 (S.D.N.Y. 2024). The scheme was uncovered through an internal investigation conducted by Polar's outside counsel, Cravath, Swaine & Moore LLP ("Cravath"). *Id.* The defendant sought approval to serve a Rule 17(c) subpoena on Polar and Cravath, seeking documents and communications relating to the defendant and others involved in the charged scheme. *Id.* The defendant successfully served subpoenas on two individuals, one being counsel to a witness and the other the wife of that witness, which the government moved to quash. The court denied the motions to compel discovery from Cravath and Polar under a Rule 17(c) subpoena and granted the government's motion to quash the served subpoenas. *Id.*

In denying the defendant's request for approval to serve a subpoena on Cravath and Polar, the court found the defendant failed to clear the required "relevancy," "admissibility," and "specificity" hurdles set out in *Nixon*. *Id.* The court further held that the requested subpoena was improper because it sought to compel "materials protected by the attorney-client privilege or work-product doctrine."[6] *Id.* at *2. In granting the government's motion to quash the served Rule 17(c) subpoenas, the court again noted that, while the subpoenas failed to clear the *Nixon* factors in the first instance, they also plainly called for the production of "a host of [] materials protected by the attorney-client privilege or work product doctrine."[7] *Id.* at *3-4.

---

[6] The materials the defendant sought to request from Cravath and Polar included "communications between Cravath and Polar" and "all documents and communications…relating to documents and communications between [Cravath] and the government." *Xu*, 2024 WL 4504352 at *2.

[7] The subpoena to the anticipated witness's counsel requested "all documents and communications exchanged between [him] and Cravath or Polar…in connection with his representation of" the anticipated witness. *Id.* at *4.

In *United States v. Zhu*, the defendant, a former employee of New York University Medical Center ("NYUMC"), was charged in connection with his employment at NYUMC. 77 F.Supp.3d 327, 328 (S.D.N.Y. 2014). After indictment, the defendant issued a Rule 17(c) subpoena to NYUMC calling for the production of various materials, including notes or memoranda reflecting the interview that NYU investigators conducted with the defendant. *Id.* at 329.

NYUMC argued that these notes or memoranda were not discoverable because they constituted attorney work product, namely, attorney-created notes relating to an interview of the defendant in the course of an internal investigation. *Id.* at 329-30. The court reviewed the notes *in camera* and agreed that the documents constituted work product. *Id.* The court further reasoned that where work product became intertwined with non-privileged facts, the facts could be obtained from the defendant himself, as he was the one who was interviewed. *Id.* at 330. Therefore, the court deemed the requested notes protected and undiscoverable. *Id.*

Similar to *Xu* and *Zhu*, the Subpoena served on the Seminary seeks to compel production of materials plainly protected by the attorney-client privilege and the work product doctrine and should be quashed. Specifically, it requests the production of Mr. Poe's notes and communications in the course of his representation of the Seminary. *See* Exhibit 1. These items are attorney-client privileged communications, attorney work product, or both. In the instances where the communications or work product become intertwined with non-privileged facts, "there is another means for [Queen] to obtain the non-privileged facts," as he is the subject of the attorney notes or a participant in the communications he seeks. *See Zhu*, 77 F.Supp.3d at 330. As set out further below, for those requested communications where he is not a participant, he can obtain them from the DOJ, a party to this case.

To protect the asserted privileges, the Seminary will not describe the contents of the requested documents in detail in this motion. However, should the Court determine that there are questions as to whether or not the materials sought by Queen are privileged, the Seminary requests that the Court view the documents *in camera* to conduct a thorough analysis. *See id.* (finding work product doctrine applied to investigators' notes following *in camera* review); *United States v. Klein*, No. 16-CR-442 (JMA), 2017 WL 782326, at *1 (E.D.N.Y. Feb. 28, 2017) (granting non-party motion to quash subpoena where requested document was "protected by the attorney-client and deliberative process privileges and by the work product doctrine" following *in camera* review).

### (c) The Subpoena is Unreasonable or Oppressive Because it Seeks Documents Otherwise Easily Procurable from a Party to this Case.

Emails of contact between Mr. Poe and the DOJ can easily be obtained from the DOJ, a party to this case, and should not be compelled from non-party SWBTS. *See United States v. Stewart*, 2003 WL 23024461 at *2 (S.D.N.Y. 2003) (showing of need for documents requested was inadequate when a party was involved in the communications in question).

### (d) Alternatively, the Court Should Modify the Subpoena to Relieve its Unreasonable or Oppressive Effect on the Seminary and its Counsel.

The Seminary objects to the Subpoena to the extent it seeks or calls for the production of any documents or information that are: (1) subject to the attorney-client privilege arising from Attorney Poe's attorney-client relationship with SWBTS; (2) protected from discovery under the work product doctrine; or (3) procurable from a party in this matter. Accordingly, should the Court decline to quash the Subpoena in its entirety, SWBTS respectfully requests the Court enter an order modifying the Subpoena to ensure compliance is not unreasonable or oppressive. Specifically, if not quashed, the Seminary requests that the Court modify the Subpoena to ensure that neither it

nor its counsel are required to produce documents protected from disclosure by the attorney-client or work product protection or obtainable from a party to this case.

### III. CONCLUSION

Non-party Southwestern Baptist Theological Seminary respectfully requests an order quashing the Subpoena in its entirety or, in the alternative, modifying its scope to compel production of only those materials that are not protected by a validly-held privilege and not easily procurable from a party to this case.

Dated: December 26, 2024.

Respectfully submitted,

By: */s/ Joshua A. Dunn*
Joshua A. Dunn
VEDDER PRICE P.C.
1633 Broadway, 31st Floor
New York, New York 10019
(212) 407-7700 (tel.)
(212) 407-7799 (fax)

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Motion to Quash or, in the Alternative, Motion for Protective Order was electronically filed and served on counsel of record via the court's CM/ECF system.

*/s/ Joshua A. Dunn*
Joshua A. Dunn