IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW QUEEN,<br><br>    Defendant. | Case No. 24 Cr. 291 (LAK) |

**NON-PARTY SOUTHWESTERN BAPTIST THEOLOGICAL
SEMINARY'S REPLY TO DEFENDANT MATTHEW QUEEN'S
RESPONSE TO ITS MOTION TO QUASH OR MODIFY THE SUBPOENA**

TO THE HONORABLE LEWIS A. KAPLAN:

Non-party Southwestern Baptist Theological Seminary ("SWBTS" or "the Seminary") files this Reply to Defendant Matthew Queen's Response to the Seminary's Motion to Quash or Modify the Subpoena. In support, the Seminary shows as follows.

## I.     INTRODUCTION

On January 3, 2024, Defendant Matthew Queen ("Queen") filed a response in opposition to the Seminary's motion requesting that the Court quash or modify the subpoena for documents served on the Seminary by Queen on or about December 16, 2024 ("Response"). ECF No. 68. The subpoena at issue commands the Seminary to produce "[d]ocuments, electronic or hard copies relating to representation of Matthew Queen by Brian Poe, Esq. that includes notes and emails of contact between Mr. Poe and Mr. Queen or DOJ, and notes of conv[ersations] between Mr. Queen and DOJ." ECF No. 63, Exhibit 1. This request improperly seeks materials subject to one or more privileges and protections. *See generally* ECF No. 63.

In support of the position that Queen is entitled to the requested documents, the Response argues that: (1) Queen is entitled to the materials because they were in the possession of an attorney representing him; and (2) "[t]he documents requested pursuant to the subpoena are not subject to

SWBTS's claim of attorney-client privilege nor work product" and that "SWBTS has no right to retain the documents or claim privilege or work product." *Id.* at 1. Queen further alleges that the Seminary's motion violates an oral agreement between his counsel and counsel for SWBTS. *Id.* Queen's arguments fail in their entirety for the reasons stated below.

II.     **ARGUMENT**

        (a)     **Queen is not Entitled to the Documents he Seeks to Compel.**

Queen is not entitled to the documents requested by the subpoena because the materials are protected from disclosure by privileges held by the Seminary, not Queen.[1] More specifically, and as briefed in the Seminary's motion to quash or modify the subpoena (ECF No. 63), the documents requested relate to Mr. Poe's former representation of SWBTS *as an entity*.

In the course of Mr. Poe's representation of SWBTS, he necessarily took actions that involved and related to then-Seminary personnel, including Queen and others, *in their capacities as Seminary personnel and employees*. He was required to do so because the government sought information from some of those personnel through interviews, grand jury appearances, and other common investigative means. These actions by Mr. Poe did not convert his representation from Seminary counsel to that of representing those personnel in their individual capacities. To conclude otherwise, as the Response invites the Court to do, would inappropriately limit what an entity's counsel can do on behalf of that entity and essentially bar the presentation of entity personnel to the government or the grand jury as fact witnesses employed by that entity. That is not the law, nor should it be.

Therefore, the materials are undiscoverable pursuant to the attorney-client privilege and

---

[1] The Seminary engaged Brian Poe to represent it as entity counsel. *See* ECF No. 63, Exhibit 2. Mr. Poe did not represent Seminary personnel in their individual capacities, nor was he engaged to do so.

attorney work product doctrine.[2] Accordingly, the Seminary's production of these materials would result in its waiver of those validly-held and asserted privileges.

Further, Queen is not entitled to the documents he seeks because Mr. Poe never represented him in an individual capacity and there is no evidence to illustrate otherwise. Instead, SWBTS alone is entitled to the requested materials and holds the privilege over them. The Seminary's production of the requested documents, as stated above, would result in a waiver of the applicable privileges—which the Seminary has never intended to do.

The Response makes numerous unsubstantiated claims in attempts to support Queen's position that he was individually represented by Mr. Poe, and is therefore entitled to materials related to this representation. *See generally* ECF No. 68. While Mr. Poe is unfortunately not able to counteract these claims himself, there is direct evidence to contradict Queen's allegations.[3]

Critically, Mr. Poe's engagement letter is instructive. *See* ECF No. 63, Exhibit 2. The attorney engagement was with SWBTS as an entity, and SWBTS alone was responsible for legal fees. *Id.* at pp. 1-2. Additionally, the letter demonstrates Mr. Poe's position as to client files, giving the Seminary alone control over requests related to the retention and destruction of files. *Id.* at pp. 2-3. Finally, the plain language of the document states that the "agreement does not include representation for any other criminal, administrative, civil, or appeal matter," meaning Mr. Poe's engagement encompassed his representation of only the Seminary. *Id.* at p. 3. Queen has not

---

[2] To the extent the requested documents are not protected by privilege, the subpoena seeks materials easily procurable from a party to this case. Queen's Response does not substantively or successfully address this issue. Instead, the Response simply agrees that Queen may have access to the information in the requested documents, but argues (without authority or other support) that this is not a basis of rejecting the subpoena because Queen's memory can be easily challenged. ECF No. 68 at 7. Therefore, in being mindful of the Court's time, the Seminary reasserts and incorporates its initial arguments here and will not re-brief the issue.

[3] While Mr. Poe cannot deny Queen's claims himself, SWBTS legal liaison, Colby Adams, is willing to provide his recollection to the Court if needed that Mr. Poe explicitly told every Seminary employee that he represented the Seminary as an entity, not the employees individually, and that each employee had the right to get his or her own lawyer if they chose to do so.

provided a separate letter or contract to exhibit Mr. Poe represented him individually, nor could he.

Even more telling are Queen's own actions. Queen acknowledges that he retained individual counsel as soon as he became a target of the government's investigation, hiring Texas criminal defense attorney Leigh Davis. *See* ECF No. 68 at 4. Mr. Davis was not retained by Queen to *replace* Mr. Poe as his individual counsel; he was retained as his *initial* individual counsel. This alone illustrates that Queen was never represented by Mr. Poe as an individual and that he did not believe that he was represented by Mr. Poe individually—if Queen already had personal representation through Mr. Poe, it follows that he would not have hired separate counsel immediately upon learning that he was a target of the government's investigation.

Finally, Queen relies on a number of exhibits to support his contention that Mr. Poe represented him individually. However, these exhibits only illustrate Mr. Poe's role in representing the Seminary and its personnel, whether Queen or others, in their positions as agents of the Seminary. If Mr. Poe represented Queen in his individual capacity, rather than or in addition to in his capacity as a Seminary employee, Mr. Poe would have had a clear conflict of interest. This fact is highlighted by Queen's engagement of Mr. Davis as his individual attorney when it became clear to him that individual counsel was necessary.

Queen attempts to infer an attorney-client relationship from select emails and a form proffer letter that do nothing to create such relationship. In doing so, he ignores the lack of an attorney engagement letter, the clear and unambiguous language of Mr. Poe's engagement letter with—and only with—the Seminary, and his own subsequent actions in retaining individual criminal defense counsel.

Queen's Response further contends that (1) the subpoena "simply requests documents that relate to Mr. Poe's representation of Dr. Queen for the investigation being conducted by the Southern District of New York" and (2) the Seminary's retention of "the same attorney to represent its interests and [payment] for the representation of Dr. Queen does not impact" the attorney-client relationship between Mr. Poe and Queen. ECF No. 68 at 6. However, this argument fails because Mr. Poe never represented Queen as an individual, and there is no evidence to show that Queen retained Mr. Poe.

The Response also asserts that the cases cited by the Seminary do not support its motion. While SWBTS disagrees with this claim as the issues considered by the courts in both *United States v. Xu* and *United States v. Zhu*[4] are applicable and relevant to the issues here[5], it is noteworthy that Queen provides no authority of his own to support his position or counteract the Seminary's request that this Court quash or modify the subpoena.

### (b) The Motion to Quash or Modify does not Violate any Oral Agreement Between Counsel for Queen and the Seminary.

At no point did counsel for the Seminary enter into an oral agreement with Queen's counsel that contradicts the Seminary's request that this Court quash or modify the subpoena. In all

---

[4] With respect to *Zhu*, 77 F.Supp.3d 327 (S.D.N.Y. 2014), Queen takes issue with the case only in that the attorney there was conducting an internal investigation and "did not present himself as representing Zhu in any way," but does not contest that that notes of the interview are attorney-client work product. ECF No. 68 at 7. As detailed throughout the Seminary's briefing, Queen has failed to demonstrate that Mr. Poe actually represented Queen in his individual capacity nor that Queen reasonably believed Mr. Poe did. Queen also argues that the court in *Zhu* "upheld the subpoena as to requests 2 and 4 specifically 'in that they speak to Zhu's intent' and were potentially admissible at trial." *Id*. at 7. But Queen fails to note that there was no argument that the documents requested in *Zhu* Requests 2 and 4 were privileged material, but in fact "would likely qualify as business records under Federal Rules of Evidence 803(6)[.]" *Zhu*, 2014 WL 5366107, at *3.

[5] The court in *United States v. Xu*, 2024 WL 4504352 (S.D.N.Y. 2024), addressed the question of whether a Rule 17(c) subpoena can properly seek materials protected by attorney-client privilege or the work-product doctrine. The court in *Zhu* considered whether an attorney's notes or memoranda relating to a hospital employee's interview with investigators were discoverable by that employee when the attorney was present at the interview but represented the hospital as an entity rather than the employee as an individual. These issues and analyses are plainly relevant here. Queen asserts that because the facts in *Xu* and *Zhu* are not effectively identical to the facts here, the cases are inapplicable. But as the Court knows, the facts of precedential cases do not need to be identical for their holdings and analyses to be persuasive.

communications, Seminary counsel made clear that while disclosure of certain materials may be possible, counsel would need to research the issues further as they related to privilege. Upon researching the matters, Seminary counsel determined that the materials could not be disclosed.

### III.     CONCLUSION

A Rule 17(c) subpoena is improper and should be quashed if it seeks materials protected by the attorney-client privilege or work-product doctrine. Here, Defendant Queen's subpoena to the Seminary requests disclosure for these exact materials, and his Response does not change this fact. Therefore, non-party Southwestern Baptist Theological Seminary respectfully requests that the Court grant the relief requested in its motion.

Dated: January 10, 2025.

                                    Respectfully submitted,

                                    By: */s/ Joshua A. Dunn*
                                        Joshua A. Dunn
                                        VEDDER PRICE P.C.
                                        1633 Broadway, 31st Floor
                                        New York, New York 10019
                                        (212) 407-7700 (tel.)
                                        (212) 407-7799 (fax)

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing reply was electronically filed and served on counsel of record via the court's CM/ECF system.

                                    */s/ Joshua A. Dunn*
                                    Joshua A. Dunn