

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

February 26, 2025

**BY ECF**

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Matthew Queen,* S2 24 Cr. 291 (LAK)

Dear Judge Kaplan:

      The Government respectfully submits this letter in advance of the March 5, 2025 sentencing of Matthew Queen (the "defendant"). The defendant made false statements to the Government in connection with a federal sexual abuse investigation. In addition, he falsified a document purporting to be contemporaneous notes that tracked and corroborated his false statements. For the reasons set forth below, the Government submits that a sentence that includes a period of home detention, consistent with the applicable Sentencing Guidelines of zero to six months, is sufficient but not greater than necessary to achieve the goals of sentencing.

**A. Factual Background**

      This case arose from the Government's investigation, starting in or about 2022, of allegations of sexual abuse and misconduct related to a national religious denomination (the "Denomination") and its affiliated entities, and the concealment of such allegations by individuals associated with the Denomination and the affiliated entities. (PSR ¶ 8[1]). As part of that investigation, a grand jury subpoena was served on a seminary affiliated with the Denomination (the "Seminary"), requiring, among other things, the production of all records in the Seminary's possession related to sexual abuse allegations. (*Id.*). At the time the subpoena was served, Matthew Queen, the defendant, was employed by the Seminary as a professor and Interim Provost. (*Id.*).

      In November 2022, soon after the subpoena was served on the Seminary, another employee at the Seminary ("Employee-1") received a report alleging that a current student at the Seminary had sexually assaulted a female victim. (PSR ¶ 9). Employee-1 notified the Seminary's campus police, but no further action was taken by anyone at the Seminary at that time. (*Id.*). The Seminary

---

[1] "PSR" refers to the final Presentence Investigation Report prepared by the U.S. Probation Office ("Probation") and filed on January 8, 2025. (Dkt. No. 69).

Page 2

also did not immediately report the allegation to the Government in response to the grand jury subpoena or otherwise. (*See id.*).

Several months later, in January 2023, the student who was the subject of the sexual assault allegation was arrested by local authorities in connection with the assault. Employees at the Seminary were made aware of the arrest and Employee-1 created a document describing the report of the sexual assault Employee-1 had received in November 2022, including that Employee-1 had notified the campus police at that time (the "Document"). (*See* PSR ¶ 10). On January 26, 2023, Employee-1 and Queen met with a member of the Seminary's executive staff ("Employee-2"). (PSR ¶ 10). During that meeting, in Queen's presence, Employee-2 directed Employee-1, in sum and substance, to destroy the Document. (*Id.*). Queen heard Employee-2 direct Employee-1 to make the Document "go away" ████████████████████████████████ (*Id.*; Def. Ex. C at 9).

In May 2023, after the Seminary informed the Government about these events, the Government interviewed witnesses from the Seminary—including Queen—in Fort Worth, Texas. Queen was interviewed by the Government on May 23, 2023 at which time he falsely stated that he had not heard Employee-2 direct Employee-1 to destroy the Document during the January 26, 2023 meeting. (PSR ¶ 11). The Government made clear during the interview that it did not credit these false statements. Days later, on May 26, 2023, Queen told another Seminary employee ("Employee-3") that he had located a notebook in his office which contained purportedly contemporaneous notes of the January 26, 2023 meeting with Employee-1 and Employee-2. (*Id.*). The notes were false, however. They were falsely dated and falsely stated that on January 26, 2023, Employee-2 and Employee-1 had discussed providing the Document to a different department at the Seminary, but omitted the fact that Employee-2 had directed Employee-1 to destroy the Document. (*Id.*). Queen turned over the notes to Employee-3 to produce to the Government. (*Id.*).[2]

The following month, on June 20, 2023, Queen met again with the Government in New York City. (PSR ¶ 12). During that meeting, Queen initially maintained—falsely—that he had written the notes contemporaneously to the January 26, 2023 meeting. (*Id.*). Later in the same meeting, he amended his position and falsely stated that he had instead written the notes in April 2023. (*Id.*). Queen did not admit during that meeting that he had actually written the notes *after* his May 23, 2023 Government Interview. (*Id.*).

The next day, Queen testified under oath in the grand jury about his participation in the January 26, 2023 meeting with Employee-1 and Employee-2. (PSR ¶ 13). Queen testified that during the meeting, he had in fact heard Employee-2 instruct Employee-1 to make the Document "go away" and ████████████████████████████████ (*Id.*; Def. Ex. C at 9). ████████████████████████████████ (Def. Ex. C. at 10).

───────────────

[2] ████████████████████████████████████████

Following his testimony, Queen met with the Government again and was questioned further about his purportedly contemporaneous notes. Queen then finally admitted that he had written the notes just prior to turning them over to be produced to the Government. (PSR ¶ 13).

## B. Procedural History

On May 16, 2024, Queen voluntarily surrendered. (PSR ¶ 14). Queen waived indictment and was arraigned on an Information charging him with falsification of records, in violation of 18 U.S.C. § 1519. On October 16, 2024, the above-referenced S2 Superseding Information was filed, adding a false statements charge, in violation of 18 U.S.C. § 1001(a)(2). (PSR ¶¶ 1, 2). Queen entered a plea of guilty to the false statements offense before United States Magistrate Judge Sarah L. Cave that same day, pursuant to a written plea agreement (the "Plea Agreement"). (PSR ¶ 4).

Pursuant to the Plea Agreement, the defendant stipulated to a Guidelines range of zero to six months' imprisonment, based on a total offense level of 4 and a criminal history category of I. (PSR ¶ 5(f)-(i)). At the plea hearing, the defendant admitted to the following conduct:

> A few days after an interview with the government officials on May 23, 2023, I gave copies of notes to others. The notes were dated January 26, indicating that they were made contemporaneously with the January 26, [20]23, conversation. I knew that the notes were to be forwarded to the government pursuant to a November. . . 2022 subpoena. The notes were not made contemporaneously . . . and were written after the May 23, 2023, interview with the government and were forwarded to the government in June 2023. During an interview on June 20, 2023 with government officials, I falsely stated when I wrote the notes about the January 26, 2023, conversation. Later, I acknowledged that I lied because the notes were written a few days after . . . the May 23, 2023, interview with the government. I knew lying to the government was wrong and illegal.

(Dkt. No. 57 at 20).

In the PSR, Probation calculates the applicable Guidelines consistent with the calculation set forth in the Plea Agreement. (PSR ¶¶ 28, 31, 58). Accordingly, the Guidelines Range calculated in the PSR is zero to six months' imprisonment. (PSR ¶ 58). Because the applicable Guidelines Range is in Zone A of the sentencing table, a sentence of imprisonment is not required. (*Id.*).

The defendant made various objections to the PSR, all of which were rejected by Probation. In particular, Probation concluded that each of the defendant's objections to the PSR appeared designed to minimize his conduct in the offense (PSR at 21-22).

Probation recommended a variance of no incarceration, one year probation, and a $2,000 fine. (PSR at 23).

On February 19, 2025, the defendant filed his sentencing submission, including multiple exhibits filed under seal. (Dkt. No. 75).    The defendant requests that the Court adopt Probation's recommended sentence.  The defendant also maintains certain objections to the PSR.

### C.  A Sentence of Supervision With a Period of Home Confinement is Appropriate in This Case

#### 1.  Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, a court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to promote respect for the law, to provide just punishment for the offense, to adequately deter criminal conduct, and to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a).

#### 2.  Discussion

Taking into account all of the factors set forth in 18 U.S.C. § 3553(a), including Queen's background, the nature and circumstances of the offense, and the importance of general and specific deterrence, a sentence that includes a year of supervised release with a period of home confinement would be sufficient but not greater than necessary to accomplish the purposes of sentencing.

*First*, the nature and seriousness of the offense and the need to provide just punishment warrant such a sentence.  *See* 18 U.S.C. § 3553(a)(1), (2)(A).  Queen's criminal conduct was serious.  Queen repeatedly made false statements during meetings with the Government about events that he knew were pertinent to an ongoing federal investigation regarding sexual abuse.  He did so despite being warned at every meeting that lying to federal law enforcement officers was a federal felony offense and despite being given multiple opportunities to correct his account.  But Queen's conduct was even more egregious due to his attempts to corroborate his false account. ███████████████████████████████████████████████████████████████████████████████ meant to bolster his cover story.  And after being confronted by the Government during his initial interview, Queen created false, purportedly contemporaneous notes consistent with his false statements.  Ultimately, the defendant only came clean about the events he actually witnessed—specifically, the January 26, 2023 meeting with Employee-1 and Employee-2—when he was brought to New York to testify before the grand jury.  And he only professed the truth about when he prepared the false notes *after* he testified.  In other words, this was not a one-time event or momentary lapse in judgment:  the defendant's criminal deceit spanned several months and involved many decisions made by the defendant, including the defendant's decision to affirmatively create a false document to corroborate his false story.

Defense counsel has repeatedly endeavored to minimize the defendant's conduct throughout these proceedings, including at the motion to dismiss stage and now at sentencing. In particular, the defendant continues to deny that he had any intent to interfere with the Government's investigation and even that he intentionally lied about what he recalled about the January 26 meeting. (Dkt. No. 75 at 2, 14-15). In fact, as the defendant testified ████████████████████████████████████████████████████████████████████ The defendant's representation that he "corrected his falsehood on his own" is also deeply misleading. Indeed, the record makes clear that he only admitted his lies—about the meeting and about the false notes he created—after being questioned extensively by the Government.[3] Finally, the defendant insists that his conduct had no ill effect but that too is untrue: the defendant's repeated lies dragged out the Government's investigation and distracted resources better spent elsewhere. In sum, the defendant's attempts at minimization should be squarely rejected by the Court.[4]

*Second*, the needs for the sentence imposed to promote respect for the law and to afford adequate deterrence to Queen and others warrant a sentence that includes home confinement. *See* 18 U.S.C. § 3553(a)(2)(A), (2)(B). Queen not only made extemporaneous false statements; he took deliberate steps to corroborate his lies with falsified notes. He did so despite knowing that what he was saying (and recording in his notebook) was false and that making those false statements was a crime. While the Government does not believe that a sentence of incarceration is necessary in this case, the sentence imposed must adequately account for the need to deter others from engaging in similar conduct that undermines the efficacy of federal law enforcement actions. Without adequate deterrence against false and obstructive conduct, the criminal justice system cannot adequately function—a result that threatens the rule of law itself. Therefore, some restriction on Queen's liberty is necessary to send the message that this kind of deliberate misconduct during a federal investigation will not be tolerated.

*Third*, Queen's requested sentence of probation, without any period of confinement, would fail to adequately balance and account for the 18 U.S.C. § 3553(a) factors in this case. The Government does not dispute that there are significant mitigating factors to consider, including the defendant's family circumstances and his lack of criminal history. The Government also does not discount the impact that the criminal case has had on the defendant's life, including on his employment. Nonetheless, as set forth herein, the other relevant factors, including the nature of

---

[3] The Government is prepared to provide witness statements—including the defendant's statements—to the Court upon request.

[4] Because they are not pertinent to Queen's culpability, the Government does not address here the defense submission's other objections and misstatements about the background of the investigation, including the events at the Seminary leading up to the Government's interviews of Queen. Needless to say, the defendant lacks personal knowledge regarding the involvement of others in these events and cannot speak to whether or not there was "misconduct" by anyone at the Seminary. (*See* Dkt. No. 75 at 13). Likewise, Queen cannot speak for the Seminary as to whether an oral report made to Seminary staff alleging sexual assault by student was understood to be within the ambit of the grand jury subpoena. (*Id.*).

the offense, the need to promote respect for the law, and to provide adequate deterrence, all militate in favor of a sentence involving some restriction of the defendant's liberty. The Government therefore requests that in addition to probation, the Court sentence the defendant to a period of home confinement.

### D. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence that includes one year of supervised release with a period of home confinement. Such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By: /s/_____
    Jacqueline C. Kelly
    Christy Slavik
    Assistant United States Attorneys
    (212) 637-2456/ 1113

cc:    Sam A. Schmidt, Esq. (by ECF)