

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

April 10, 2025

**BY EMAIL & ECF**
Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Matthew Queen*, 24 Cr. 291 (LAK)

Dear Judge Kaplan:

      The Government respectfully submits this letter in response to the defendant's March 20, 2025 letter (the "March 20 Letter"), requesting unsealing and un-redacting of his motions and sentencing submissions, including certain exhibits (*See* Dkt. 88). With the exception of the defendant's own statements reflected in interview notes and reports, this request should be denied.

### Background

      The defendant seeks the unsealing of a number of exhibits attached to various filings, including his opposition to the protective order (Dkt. 21); motion to dismiss memorandum (Dkt. 42); and sentencing submissions (Dkt. 75, 79).[1] He further seeks the removal of redactions from the associated filings where the text references, quotes, or relies on the underlying exhibits. Some of the exhibits at issue were produced to the Government by the seminary where the defendant was previously employed (the "Seminary"). They include the defendant's handwritten notes containing false statements (the "Notes")—the subject of the above-referenced prosecution—as well as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[2] The exhibits also include excerpts of FBI notes and reports documenting interviews of the defendant; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Other exhibits include ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Many of the exhibits were produced to the defendant by the Government as part of discovery. The remaining exhibits,

---

[1] Because certain exhibits are attached to multiple filings, the Government does not refer to them herein by exhibit number. Descriptions of the exhibits are redacted for public filing.

[2] The defendant further attached ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as Ex. D to his motion to dismiss.

relating to ▮▮▮▮, were produced to the defendant by the Seminary under a Fed. R. Evid. 502(d) Order.

## Applicable Law

The weight to be given the common law presumption of access "must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995). After determining the weight of the presumption of access, the Court must "balance competing considerations against it" including, but not limited to "the danger of impairing law enforcement or judicial efficiency" and the "privacy interests of those resisting disclosure." *Id.*

The Second Circuit has held that "[t]he privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure. . . should weigh heavily in a court's balancing equation." *In re New York Reporters Committee Co.*, 828 F.2d 110, 116 (2d Cir. 1987); *see also In re Newsday, Inc.*, 895 F.2d 74, 79-80 (2d Cir. 1990). The Second Circuit has identified such interests as "a venerable common law exception to the presumption of access." *Amodeo*, 71 F.3d at 1051. "In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public." *Id.* (listing "[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters" as weighing more heavily against access than conduct affecting a substantial portion of the public). "The nature and degree of injury must also be weighed." *Id.* Finally, in balancing the qualified right of public access against privacy interests, courts must consider "the sensitivity of the information and the subject," and whether "there is a fair opportunity for the subject to respond to any accusations contained therein." *Id.*

The Second Circuit has also identified the law enforcement privilege as an interest worthy of protection, noting that the privilege is designed:

> to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

*In re Dep't of Investigation*, 856 F.2d 481 (2d Cir. 1988). In addition, the court in *Amodeo* found that the voluntary cooperation of persons who may want or need confidentiality "is also often essential to judicial efficiency." 71 F.3d at 1050. Thus, "[i]f release [of a judicial document] is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." *Id.*

## Discussion

The March 20 Letter acknowledges that there has been no press request for the unsealing of any materials in this case. (Dkt. 88 at 3-4). Nonetheless, the defendant asserts that he has a

"First Amendment right to challenge the misstatements made by the press of the government" using documents filed under seal under the Protective Order in the case. (*Id.*). In short, despite already facing no restriction on his ability to make whatever statements he wishes about his involvement in the charged conduct to the press and otherwise, the defendant appears to seek the Court's permission to unseal a cherry-picked selection of excerpted documents to corroborate his narrative. This transparently self-serving objective fails to outweigh the privacy interests of the Seminary and other witnesses and, as to certain materials, the attendant law enforcement privilege.

As an initial matter, the Government does not object to the unsealing of exhibits containing only excerpts of the FBI's notes and reports of the defendant's interviews.³ These exhibits merely document the defendant's own statements and it appears that he has waived any privacy interests in the documents. Likewise, the Government does not object to portions of his filings that quote or reference his own statements being un-redacted. However, to the extent that the exhibits or briefing reference other witnesses who have *not* waived their privacy interests, such information must remain redacted and sealed. The Government respectfully requests that should the Court permit this information to be unsealed and un-redacted, that the defendant be directed to confer with the Government regarding his proposed re-filings before filing them on the docket.

The Government opposes the unsealing or un-redacting of the remainder of the exhibits and associated briefing. While there is a general presumption of public access to judicial documents, *Logosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006), "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document," *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). Here, it is not at all clear that *any* of the exhibits constitute judicial documents. The Court has not relied on any of the exhibits in its rulings nor cited to any of them at sentencing and none of the exhibits have been made public at a trial or other proceeding. Rather, the exhibits have been repeatedly filed by the defendant to advance his counternarrative, which is the openly stated goal of the instant request. In these circumstances, "the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo*, 71 F.3d at 1050 (noting that documents "passed between the parties in discovery, lie entirely beyond the presumption's reach").

By contrast, the weight of the countervailing interests here is high. The other parties implicated in the defendant's exhibits and briefing, ███████████████████████ ███████████████████████████████, have not waived their privacy interests in these documents. Indeed, the Seminary has confirmed to the Government that it does *not* waive its applicable privacy interests in the documents it produced to the Government in response to legal process. These documents include ███████████████████████████████████████ ███████████████████████████████████████████████████████████████ Likewise, FBI interview notes and reports concerning interviews with ███████████████ ███████████ implicate third party privacy interests and should remain sealed. These third party witnesses have not been charged with any crimes, nor have they waived their privacy interests. *See, e.g., SEC v. Ahmed*, No. 15 Civ. 675 (JBA), 2018 WL 4266079, at *3 (D. Conn. Sept. 6, 2018) (sealing certain documents based, in part, on privacy interests of a third party); *In re Search Warrant*, No. 16 Misc. 464 (PKC), 2016 WL 7339113, at *4 (S.D.N.Y. Dec. 19, 2016) ("[A]

---

³ These excerpted exhibits include Exs. D and E to Dkt. 21 and Exs. C, F, and G to Dkt. 42.

person whose conduct is the subject of a criminal investigation but is not charged with a crime should not have his or her reputation sullied by the mere circumstance of an investigation").

Further, the FBI notes and reports of all witnesses except the defendant should stay under seal to protect the law enforcement privilege.  Likewise, the ███████████████ ████████ should remain sealed.  These documents would unnecessarily reveal information about the investigation, ████████████████████████████████████████████████ ███████████████████  In particular, there is a strong interest in maintaining the confidentiality of those who cooperate voluntarily with an investigation like ████████████████ ████████.[4]  *See Amodeo*, 71 F.3d at 1050 (the voluntary cooperation of persons who may want or need confidentiality "is also often essential to judicial efficiency").

Finally, with respect to the documents relating to ████████, the Government understands from the Seminary's current legal counsel that the Seminary is not waiving any applicable privilege or privacy interests in those documents.  Indeed, the Government understands that certain of the exhibits were produced pursuant to an Order issued pursuant to Fed. R. Evid. 502(d), which expressly preserved the Seminary's privilege claims.

## Conclusion

Accordingly, with the exception of the defendant's own statements, the Government requests that the Court order that all the exhibits attached to the March 20 Letter remain under seal and that the corresponding factual information in his briefs remain redacted.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By: /s/ Jacqueline Kelly
Jacqueline Kelly
Christy Slavik
Assistant United States Attorneys
Southern District of New York
(212) 637-2456 / 1113

---

[4] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████