UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,


                    -against-                                          24-cr-291 (LAK)


MATTHEW QUEEN,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
┌─────────────────────────────┐
│ USDS SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #: _____  │
│ DATE FILED: 05/22/2025       │
└─────────────────────────────┘
```

**MEMORANDUM OPINION**

Appearances:

                              Jacqueline Kelly
                              Mitzi Steiner
                              Mary Christine Slavik
                              Assistant United States Attorneys
                              JAY CLAYTON
                              UNITED STATES ATTORNEY

                              Sam A. Schmidt
                              LAW OFFICE OF SAM A. SCHMIDT
                              *Attorney for Defendant*

                              Joshua Alan Dunn
                              VEDDER PRICE P.C.
                              *Attorney for Non-Party Southwestern Baptist*
                              *Theological Seminary*


LEWIS A. KAPLAN, *District Judge*

               This closed criminal case is before the Court on a motion by the convicted defendant

to unseal certain documents filed or produced during the pretrial proceedings.

*Facts*

In 2022, the government began investigating allegations of sexual abuse and misconduct and a cover-up of those allegations by individuals associated with a religious denomination and its affiliates (the "Convention"). In connection with the investigation, the government interviewed Matthew Queen, the then-Interim Provost of Southwestern Baptist Theological Seminary ("SWBTS"), on May 23, 2023.

During the interview, Queen provided a false account of a January 2023 meeting among seminary employees during which one employee ("Employee-2") told another ("Employee-1") to make a document describing a sexual abuse allegation "go away." Three days later, Queen furnished notes containing a date that falsely indicated the notes were taken contemporaneously with the January 2023 meeting. The notes stated that Employee-2 and Employee-1 had discussed providing the document to a different SWBTS department, but omitted the fact that Employee-2 had directed Employee-1 to destroy the document.[1] He ultimately was charged by a superseding information and pleaded guilty to making false statements during a meeting with the United States Attorney's Office and a Federal Bureau of Investigation special agent.[2]

Shortly after sentencing, Queen moved to remove redactions from (1) his objection to the entry of a protective order ("PO Objection"), (2) his memorandum in support of his motion to dismiss the original indictment ("MTD Brief"), and (3) his sentencing submissions. He moved also to unseal other documents filed in connection with those filings, including documents produced

---

[1]    Queen provided those notes to a SWBTS employee with the knowledge that they would be forwarded to the government pursuant to a grand jury subpoena issued to SWBTS,

[2]    Dkt 57.

by the government ("Government-Produced Documents") subject to a protective order[3] and a document produced by SWBTS ("SWBTS-Produced Document") subject to a Federal Rule of Evidence 502(d) order ("502(d) Order").

### Discussion

#### I.    Legal Standard

The public has a presumptive common law right to access judicial documents.[4]  In addition, the First Amendment protects the public's right to access judicial documents and proceedings.[5]  "[T]he mere filing of a paper or document with the court[, however,] is insufficient to render that paper a judicial document subject to the right of public access. . . . [T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."[6]

"Once a court determines that the item in question is a judicial document, and thus subject to the common law presumption of access, the court must 'determine the weight' of that presumption."[7]  "[T]he weight to be given the presumption of access must be governed by the role

---

[3]     *See* Dkt 27; Dkt 34.

[4]     *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016).

[5]     *Hartford Courant Co. v. Pelligrino*, 380 F.3d 83, 91–92 (2d Cir. 2004).

[6]     *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*").

[7]     *In re Search Warrant*, No. 16-MAG-7063, 2016 WL 7339113, at *3 (S.D.N.Y. Dec. 19, 2016) (quoting *United States v. Erie County*, 763 F.3d 235, 239 (2d Cir. 2014)).

of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."[8]  "Notwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand."[9]

## II.    Government-Produced Documents and Related Filings

As an initial matter, the government does not object to the unsealing of exhibits containing only excerpts of the FBI's notes and reports of the defendant's interviews, including Exhibits D and E to the PO Objection and Exhibits C, F, and G to the MTD Brief.[10]  The motion to unseal therefore will be granted as to these documents.  For the remaining documents, the Court analyzes (1) the applicability of the common law presumption of public access, (2) the applicability of the First Amendment presumption of access, and (3) whether countervailing factors or higher values support sealing documents subject to a presumption of access.

### A.    Common Law Presumption of Public Access

Queen argues that the PO Objection, the MTD Brief, his sentencing submissions, and the Government-Produced Documents attached thereto are judicial documents subject to a

---

[8]    *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir.1995) ("*Amodeo II*").

[9]    *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006)

[10]    Dkt 89 at 3.

presumption of public access.  The government argues that some or all of them are not judicial documents because the Court has not relied on them and they have not been made public at a trial or other proceeding.

1.    *PO Objection*

The PO Objection and the Government-Produced Documents attached to it are "relevant to the performance of the judicial function"[11] — resolution of Queen's objections to the protective order.  Accordingly, these documents do not "lie entirely beyond the presumption's reach."[12]

The weight afforded to that presumption is another matter.  It "must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."[13]  "[A] strong presumption of access attaches" for documents "used to determine litigants' substantive legal rights."[14]  "Where testimony or documents play only a negligible role in the performance of Article III duties, [however,] the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason."[15]  The extent to which documents were relied upon in resolving a given

---

[11]    *Amodeo I*, 44 F.3d at 145.

[12]    *Amodeo II*, 71 F.3d at 1050.

[13]    *Id.* at 1049.

[14]    *Lugosch*, 435 F.3d at 121.

[15]    *Amodeo II*, 71 F.3d at 1050.

6

motion does not affect the weight of the presumption.[16]

Here, the PO Objection did not affect directly the adjudication of Queen's substantive rights. Rather, the determination of the application of the protective order played a negligible role in the performance of the Court's Article III duties.[17] Accordingly, the weight of the presumption as to the PO Objection and attached documents is low.

### 2.    *MTD Brief*

Whether the MTD Brief and the documents attached thereto are judicial documents presents a closer call. In *Standard Investment Chartered, Inc. v. National Association of Securities Dealers, Inc.*,[18] the court ruled that documents submitted in connection with a motion to dismiss that included a factual challenge to subject matter jurisdiction qualified as judicial documents.[19] On the other hand, the court held also that documents submitted in connection with a Rule 12(b)(6) motion to dismiss were not judicial documents because "[d]ocuments submitted with such a motion are, by definition, excluded from the court's purview, and are therefore of no value to someone wishing to

---

[16]

    *Lugosch*, 435 F.3d at 123.

[17]

    *Cf. Amodeo II*, 71 F.3d at 1049 ("[T]he strong weight to be accorded the public right of access to judicial documents was largely derived from the role those documents played in determining litigants' substantive rights—conduct at the heart of Article III—and from the need for public monitoring of that conduct. As one moves along the continuum, the weight of the presumption declines.").

[18]

    621 F. Supp. 2d 55 (S.D.N.Y. 2007).

[19]

    *Id.* at 66.

evaluate the court's decision."[20]

In the MTD Brief, "the defendant ask[ed] the Court to consider facts beyond the four corners of the Indictment, setting forth additional facts sourced to certain cherry-picked documents attached as exhibits as well as other facts not sourced at all."[21]  This effort was inappropriate because "sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment."[22]  As the Court noted in denying the motion, the motion to dismiss functionally was "a motion for summary judgment in sheep's clothing,"[23] and "summary judgment does not exist in federal criminal procedure."[24]  The documents attached to the MTD Brief therefore were excluded from the court's purview and were not judicial documents.  Consequently, no presumption of access applies to the redacted portions of the MTD Brief quoting or referencing the Government-Produced Documents at issue.

### 3.    *Sentencing Submissions*

Queen's sentencing submissions and exhibits attached thereto appropriately  were "submitted as part and parcel of [Queen's] legal arguments for a particular sentence to influence the

---

[20]

*Id.*

[21]

Dkt 47 at 6.

[22]

*United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998).

[23]

Dkt 50 at 18:8–9.

[24]

*United States v. Sampson*, 898 F.3d 270, 282 (2d Cir. 2018).

court's sentencing decision."[25]   Accordingly, they are judicial documents.

Other courts in this Circuit have held that the weight of the presumption of public access is particularly strong as applied to sentencing submissions.[26] The Court agrees that the weight of the presumption as to sentencing submissions is strong because they implicate the adjudication of the defendant's substantive rights.[27]

B.    *First Amendment Presumption of Public Access*

"Having concluded that the common law presumption of access exists in [aspects of the relevant] context, [the Court] may not avoid the question of whether a First Amendment presumption of access also exists."[28]

The Second Circuit has "articulated two different approaches for determining whether the public and the press should receive First Amendment protection in their attempts to access certain judicial documents."[29] Under the first approach — called the "experience and logic" analysis — the court "consider[s] both whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the

---

[25]

    *Rainiere*, 2021 WL 4522298, at *3.

[26]

    *Id.*; *United States v. Munir*, 953 F. Supp. 2d 470, 477 (E.D.N.Y. 2013); *United States v. King*, No. 10 CR 122 JGK, 2012 WL 2196674, at *3 (S.D.N.Y. June 15, 2012).

[27]

    *See Lugosch*, 435 F.3d at 122; *Amodeo II*, 71 F.3d at 1049.

[28]

    *Id.* at 124.

[29]

    *Id.* at 120.

9

particular process in question.'"[30]  Under the second, the court "considers the extent to which the judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings.'"[31]

### 1.    PO Objection and MTD Brief

Experience and logic indicate that no First Amendment presumption of access applies to the PO Objection and attached exhibits.  Proceedings adjudicating whether certain documents are to be shielded from public view historically have not been open to the press and general public.  And the role of public access in these proceedings is minimal to non-existent — indeed, granting public access to these proceedings would defeat their purpose, which is to determine whether information or documents should be shielded from public view.

Under the second approach, courts assess whether documents are "submitted in connection with judicial proceedings that themselves implicate the right of access."[32] For the reasons stated above, proceedings regarding the protective order do not implicate a right of access.

Accordingly, under either standard set forth by the Second Circuit, no First Amendment presumption of access applies to the PO Objection and documents attached thereto.

Nor does any First Amendment presumption of access apply to the Government-

---

[30]      *Id.* (quoting *Hartford Courant*, 380 F.3d at 91).

[31]      *Id.* (quoting *Hartford Courant*, 380 F.3d at 93).

[32]      *Hartford Courant*, 380 F.3d at 93 (quoting *United States v. Antar*, 38 F.3d 1348, 1360 (3d Cir.1994)).

Produced Documents attached to the MTD Brief.[33]

### 2.    Sentencing Submissions

As another court in this Circuit has recognized, "the historical principle of open access to criminal matters and its important democratic functions are well established.  This fundamental principle of criminal law is highlighted by Congress's directive that sentencing proceedings must be held in 'open court.'  Relatedly, the documents relied on in sentencing arguments are an essential corollary to the sentencing proceedings, and the court views access to such documents the same way that access to the proceedings themselves are viewed, absent compelling competing concerns."[34]  So too here, the Court concludes that a First Amendment presumption of public access applies to documents attached to Queen's sentencing submissions.

### C.    Countervailing Factors or Higher Values

Where a presumption of public access applies, "documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand."[35]  In the common law context, "countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests

---

[33]      *Id.* (First Amendment provides "qualified right of access to *judicial* documents" (emphasis added)); *see also Standard Inv. Chartered, Inc.*, 621 F. Supp. 2d at 71 (no First Amendment presumption of access to documents that are not judicial documents).  This same logic applies to factual material in the MTD Brief itself quoting or referencing those documents.

[34]      *Rainiere*,  2021 WL 4522298, at *4 (quoting 18 U.S.C. § 3553(c)) (citation omitted).

[35]      *Lugosch*, 435 F.3d at 124.

of those resisting disclosure.'"[36]  For First Amendment purposes, "documents may be sealed if 'specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"[37]

In support of continued sealing of a subset of the Government-Produced Documents, the government points to (1) the privacy interests of third party witnesses, and (2) preservation of the confidentiality of the government's investigation.

As to the first point, the government does not assert that privacy interests of any victims of sexual harassment or assault are at stake.  Rather, it asserts that SWBTS, its employees, and a witness have not waived their privacy interests in documents or information they furnished to the government during the investigation. The Second Circuit has recognized "[f]inancial records of wholly owned business, family affairs, illnesses, and embarrassing conduct with no public ramifications, and similar matters" weigh against public access to judicial documents.[38] The government has not asserted –- and the Court has not identified — the existence of any such sensitive matters in the documents attached to the sentencing submissions.

With respect to confidentiality of the government's investigation, the government asserts that unsealing FBI interview notes with third parties "would unnecessarily reveal information

---

[36]    *Id.* at 120 (quoting *Amodeo II*, 71 F.3d at 1050).

[37]    *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (quoting *Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 106 S. Ct. 2735, 2743 (1986)).

[38]    *Amodeo II*, 71 F.3d at 1051.

12

about the investigation" and undermine the confidentiality of those who cooperated voluntarily.[39] The government does not refute Queen's assertion that the investigation relating to sexual abuse and related cover-ups within the Convention has ended.

Notwithstanding the government's concession that the investigation has concluded, the interests it asserts are sufficient to overcome the weak presumption of public access applicable to the PO Objection and attached documents. The weak presumption of public access "amounts to little more than a prediction of public access absent a countervailing reason."[40]  The privacy and confidentiality interests cited by the government satisfy this low bar.

The privacy and confidentiality interests do not show, however, that sealing is essential to preserve higher values and is narrowly tailored to serve that interest.  Accordingly, these interests are not sufficient to overcome the First Amendment presumption of public access applicable to Queen's sentencing submissions.  To the extent that privacy and the identity of witnesses who cooperated voluntarily is implicated, those interests can be served by redacting personally identifiable information.

III.    *SWBTS-Produced Document*

The SWBTS-Produced Document was produced subject to a 502(d) Order. Consistent with Federal Rule of Evidence 502(d), the 502(d) Order provided that the production did not waive

---

[39]     Dkt 89 at 4.

[40]     *Amodeo II*, 71 F.3d at 1050.

or forfeit any privilege claims over produced documents.[41]  SWBTS, moreover, asserts that the SWBTS-Produced Document is attorney work product because it contains both factual information and attorney impressions of an attorney retained by SWBTS, Brian Poe.[42]

 Queen contends that the document is not protected because Poe, who is deceased, held himself out as Queen's attorney and Queen believed Poe to have been his attorney.  For example, Queen points to an email Poe sent to the government identifying himself as Queen's attorney and a proffer agreement that identifies Poe as Queen's attorney.  Queen cites also a conversation he allegedly had with David Dockery, SWBTS's president, during which Dockery purportedly "told Dr. Queen that he should not spend his money on an attorney and that the Seminary was paying Mr. Poe to represent him."[43]

 Queen has not shown that SWBTS has waived its privilege claim as to the SWBTS-Produced Document.  As an initial matter, Poe did not have the authority to waive any privilege controlled by SWBTS.[44]  As to Dr. Dockery — who the Court assumes (but does not decide) did have such authority — there is no competent, persuasive evidence supporting Queen's assertion. Rather, Queen's reply brief in support of this motion includes a paraphrased recollection of a years-

---

[41]   *See* Dkt 74.

[42]   Dkt 90 at 2 (citing *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 532 (S.D.N.Y. 2015) ("Interview notes and memoranda produced in the course of similar internal investigations have long been considered classic attorney work product.").

[43]   Dkt 91 at 5.

[44]   *In re von Bulow*, 828 F.2d 94, 100 (2d Cir.1987) ("[P]rivilege belongs solely to the client and may only be waived by him. An attorney may not waive the privilege without his client's consent.").

14

old conversation unsupported by a declaration from Queen.  Moreover, Queen has not identified any authority supporting the conclusion that Dr. Dockery's statements to Queen about Poe representing him would have waived SWBTS's work product protection.

Accordingly, the SWBTS-Produced Document is protected by work product.  Indeed, unsealing it would defeat the purpose of the 502(d) Order.[45]

### Conclusion

The motion to unseal and unredact partially certain filings (Dkt 88) is granted to the extent that (1) Exhibits C, F, and G to the memorandum in support of Queen's motion to dismiss and all exhibits attached to Queen's sentencing submissions, except for the SWBTS-Produced Document, are to be unsealed with redactions of personally identifying information of non-parties, and (2) all redactions in Queen's sentencing submissions, with the exception of any redacted references to information contained in the SWBTS-Produced Document, are to be unredacted.  The parties shall meet and confer regarding any redactions necessary to safeguard personally identifiable information of third parties and file the unsealed, redacted documents and unredacted sentencing

---

[45]  *See United States v. Daugerdas*, No. 09-cr-581 (WHP), 2012 WL 92293, at *2  (S.D.N.Y. Jan. 11, 2012) (denying motion to unseal privileged document produced pursuant to Rule 502(d) order).

15

submissions on the public docket no later than June 6, 2025.  The motion is otherwise denied.

SO ORDERED.

Dated:          May 22, 2025

/s/ Lewis A. Kaplan
_____
Lewis A. Kaplan
United States District Judge